C. Iber & Sons, Inc., an Illinois Corporation, Plaintiff-Appellee, v. George S. Grimmett, d/b/a George S. Grimmett & Company, Defendant-Appellant.

Gen. No. 68–88.

Third District.

May 21, 1969.

443

Horsley, Vespa and Lott, of Springfield, for appellant.

Davis, Morgan & Witherell, of Peoria, for appellee.

STOUDER, P. J.

Plaintiff-Appellee, C. Iber & Sons, Inc., commenced this action in the Circuit Court of Peoria County seeking to recover damages for breach of contract from Defendant-Appellant, George S. Grimmett, d/b/a Geo. S. Grimmett & Co. The court, sitting without a jury, entered judgment in favor of plaintiff for $2,200 from which judgment defendant has appealed.

The principal issue raised on this appeal is defendant's contention that the evidence is insufficient to warrant the conclusion that a contract existed between the parties.

Plaintiff, Iber, is a general contractor in Peoria, Illinois. Defendant, Grimmett, is a tile and acoustical contractor in Springfield, Illinois. Prior to September, 1963, construction of Shamel Manor in Normal, Illinois, was proposed. Plans were prepared by an architect and submitted to general contractors, including Iber, for bids. Iber, in turn, invited Grimmett to bid on certain aspects of the proposed construction. Grimmett submitted a written bid dated September 26, 1963, to Iber. The bid was divided into three general areas, the first relating to resilient flooring, the second to ceramic tile and the third, to acoustical treatment. An amount was specified for each area, the amount for the resilient tile, the item in controversy, being $8,740. Iber was awarded the general contract on November 1, 1963, and the building was completed in the fall of 1964.

Between September 26, 1963, and January 3, 1964, several telephone conversations took place between employees of the parties. Tousley, the purchasing agent of plaintiff, testified concerning two of these telephone calls, being apparently the only ones dealing with the present controversy. According to his testimony he talked with Joe Busch, an estimator for Grimmett, shortly after Grimmett's bid was received in the latter part of September, 1963. According to Tousley he told Busch that Grimmett was the low bidder on the resilient flooring, (other portions of the bid were not mentioned), that the architect had requested a bid on alternate 4 which was not included in Grimmett's bid and asked that the plans be picked up and a bid on alternate 4 be submitted. Alternate 4 was an optional addition to the resilient floor tile work.

According to Tousley he again called Busch on January 3, 1964. His testimony concerning this conversation

445

is as follows: "Q. And on January 3, 1964 you indicated you had a conversation with Mr. Busch, and what if anything did you say and what if anything did he say? A. Well, at that time I asked him if he had a quotation on alternate 4, which he said he did, and he gave me the price of $1,855.00, I believe. Yes. And then I said ok that we would take his base bid the quotation of $8,740.-00 for the resilient flooring, plus alternate #4 of the $1,855.00 and that we would accept that and that we would send him a purchase order for that amount to do the resilient flooring. Q. And, in fact did you send him the purchase order in connection with this? A. I did." Busch, called as a witness by defendant, testified that he recalled that he had received a telephone call from Tousley about the 3rd of January, that he made no agreement with Tousley concerning the resilient floor tile and that he had no recollection of making any quotation on alternate 4 on that occasion.

Iber sent its purchase order to Grimmett dated January 3, 1964, covering only the resilient floor for a total price of $10,595. At the top of the purchase order appeared the following statement, "Enter the following order in accordance with the terms and conditions of your proposal over long distance on January 3, 1964 by Joe Busch." Attached to the purchase order was a card which requested that it be signed and returned to Iber. The card contained the following statement, "We acknowledge receipt of your purchase order number 7483–477 and accept same. Dated January 3, 1964." Grimmett received the January 3rd purchase order and enclosed card but did not sign and return the card.

By letter dated January 21, 1964, Iber indicated that it had not received an FHA form included with the January 3rd purchase order and requested that Grimmett sign and return the same. Such form was not executed and returned.

By his letter dated January 25, 1964, Grimmett returned the January 3rd purchase order indicating that he would not accept such order. The letter concluded with "If you will revise your purchase order to include all items as set forth in our quotation dated September 26, 1963, we will be glad to execute same." Grimmett testified that he rejected the purchase order for the resilient floor tile only because the amount specified therefor was related to the entire job whereby he could organize and control the different trades required. On January 29, 1964, Iber wrote Grimmett enclosing the returned January 3 purchase order. The letter stated "We are returning our purchase order without any changes because it confirms our acceptance of your proposal on January 3, 1964. Please acknowledge receipt of this order by signing and returning the attached card by return mail." The letter concluded with "If we do not receive a written acceptance of our purchase order number 7483–447 dated January 3, 1964, by Wednesday, February 5, 1964 we will proceed to award the work to another company and will hold your firm accountable for any extra cost incurred by us."

Grimmett did not respond to the foregoing letter and late in February 1964, Iber awarded the resilient floor tile work to Floorkrafters of Peoria, Illinois, who submitted a bid therefor for $13,000. Floorkrafters performed the work and were paid $10,620, the difference being represented by reductions requested by the architect. Plaintiff sought damages predicated on the difference between the Floorkrafters' bid and Grimmett's bid.

In arguing that the trial court erred in holding a contract existed between the parties, defendant contends the evidence fails to support the conclusion that there was any meeting of minds between the parties, i. e., no offer and acceptance.

■■■■ The general rule is that the party seeking to enforce an agreement has the burden of establishing the

existence of the agreement. Continental Illinois National Bank & Trust Co. of Chicago v. National Casket Co., Inc., 27 Ill App2d 447, 169 NE2d 853. It is also well settled that before any agreement can exist there must be an offer and acceptance thereof. A purported acceptance of an offer which does not substantially accept the offer in accord with its terms is a counteroffer requiring in its turn acceptance in order to constitute an agreement. Brook v. Oberlander, 49 Ill App2d 312, 199 NE2d 613. In the Brook case the defendant subcontractor made a written bid for certain proposed electrical work to the plaintiff general contractor which bid was included as a basis for the acceptance of the general contractor's bid for the job. At a subsequent meeting the general contractor delivered certain documents to the subcontractor which documents required that they be executed by both parties before any binding contract should exist. Although the subcontractor orally stated at the meeting that he would commence the work next week he nevertheless failed to do so and did not execute the required documents. The court, in holding for the defendant subcontractor, concluded that there had been no unconditional acceptance of the bid by the general contractor and likewise no acceptance by the subcontractor of the general contractor's counteroffer. Although the Brook's case is not completely analogous on its facts, it is in some respects similar to the instant case involving as it does the failure of the general contractor to accept the subcontractor's bid as proposed.

In the instant case, it is undisputed that Iber did not accept Grimmett's bid of September 26th and, in fact, Iber makes no claim that the agreement which it claims to exist was based on such acceptance. It would also appear that if the purchase order of January 3 were considered without regard to the telephone conversation which preceded it, such purchase order is in legal effect, a counter-

offer by Iber requiring acceptance by Grimmett, which acceptance was not forthcoming.

In insisting that an oral contract was made on January 3rd, plaintiff appears to us to be relying on Busch's lack of any particular recollection of the telephone conversation, thus justifying any inference it desires from Tousley's account of such conversation. We have heretofore quoted the only testimony which Tousley gave with respect to the telephone conversation. Considering this testimony as true and viewing it most favorably to plaintiff, we find nothing in such testimony from which it can be reasonably inferred that Busch, in behalf of defendant, offered to install the resilient floor tile only or as a separate item of the September 26th bid. As noted above the only statement or conversation attributed to Busch by Tousley was a quotation for alternate 4. At best, Busch's statement may be regarded as an amendment to the resilient tile item and offers no basis for inferring that an offer was made to install the resilient floor tiling only. Whatever may be inferred from Tousley's account of his own part of the conversation his testimony fails to indicate that whatever was intended was accepted by Busch.

This brings us to the purchase order dated the same day as the telephone conversation. Plaintiff seeks to characterize the purchase order as a "memorial" of the telephone conversation on the apparent assumption that such characterization may thus avoid its conditional nature. Although such purchase order may be said to confirm the fact of a prior telephone conversation, it may not be inferred from such purchase order that an offer was made and accepted on the telephone. On the contrary, the only reasonable inference therefrom is that there was no prior offer and acceptance. While it may be true that acceptance of an offer must be manifested or communicated to the offeror, this does not mean that an "acceptance" must be "accepted" and in fact plaintiff

does not claim the purchase order to be an acceptance of any offer of defendant, rather plaintiff insists that the failure to accept the purchase order amounts to a repudiation of the contract, relying on Chicago Coliseum Club v. Dempsey, 265 Ill App 542. We find no merit to such contention since a contract must exist before it can be repudiated. The letter from Grimmett declining to accept the purchase order is not indicative that any contract theretofore existed and in our opinion constituted a rejection of a counteroffer as made by the purchase order.

That no meeting of the minds took place between the parties, i. e., an offer of one was accepted by the other, is further demonstrated by the allegations of plaintiff in its complaint regarding the telephone conversation relied upon. Paragraph eight, relating to such conversation of January 3rd states the following: ". . . the defendant's bid for the flooring . . . was again acknowledged by the defendant, and accepted by the plaintiff in Peoria County, Illinois. During this conversation and the aforementioned conversation, the defendant acknowledged and accepted the terms of this contract." From such allegations it would appear that each party "accepted" something, presumably an offer of the other, which at best discloses an inability on the part of the plaintiff to decide whether it had made an offer or had accepted an offer.

The most that can be said about the telephone conversation is that the quotation of a price for alternate 4 constituted an oral amendment of the September 26th bid and neither the conversation or the conduct of the parties thereafter indicated any offer or acceptance. It appears to us that plaintiff assumed that defendant would agree to perform the resilient floor tile work only, which assumption later proved erroneous. In order to avoid the consequences of such erroneous assumption the plaintiff sought to infer the existence of a contract which did not exist.

For the foregoing reasons we believe the judgment of the Circuit Court of Peoria County is erroneous and its judgment is reversed.

Judgment reversed.

ALLOY and RYAN, JJ., concur.