CASE INTERNATIONAL COMPANY, Plaintiff-Appellant, Cross-Appellee, *v.* AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Defendants—(MARTIN C. FAYE *et al.*, Plaintiffs-Appellees, Cross-Appellants, *v.* HYDE PARK CONDOMINIUM, INC. *et al.*, Defendants-Appellants.)

(No. 56518;

First District (2nd Division)—March 12, 1974.

Herrick, McNeil, McElroy & Peregrine, of Chicago (Ray W. Fick, Jr., and Michael J. Hamblet, of counsel), for Case International Company.

David Chaimovitz, of Chicago (Peter Fitzpatrick and Alfred L. O'Connor, of counsel), for Hyde Park Condominium, Inc.

Bernstein, Golan & Yalowitz, of Chicago (Earle G. Kallen, of counsel), for Martin C. Faye.

Mr. JUSTICE DOWNING delivered the opinion of the court:

After a consolidated bench trial of actions to foreclose the lien of a trust deed on a tract of real estate, and to foreclose several mechanic's liens on the same tract of land, the trial court entered a decree giving rise to this appeal.

On June 13, 1968, Case International Company (hereinafter "Case") filed its complaint to foreclose its mechanic's lien against the American National Bank and Trust Company (hereinafter "American") as trustee under Trust No. 22916, the Chicago Title & Trust Co. as trustee under a trust deed, Hyde Park Condominium, Inc. (hereinafter "Hyde Park"), and unknown owners. (Cause No. 68 CH 2441.)

In its complaint, Case alleged a written agreement with Hyde Park whereby Case agreed to furnish all labor and materials necessary to install 61 caissons upon real estate located at 5400 S. Hyde Park Boulevard in Chicago. Title to the real estate was held under Trust 22916. Case further alleged performance of its duties under the contract; that Hyde Park had ignored its requests for payment of $63,022.11; that it was entitled to a mechanic's lien upon the real estate in that amount; and that it had caused its lien to be filed with the recorder of deeds on June 7, 1968.

American, both as trustee and as holder of the note, filed answers. Thereafter, American, in its capacity as holder of the note, was dismissed since on April 30, 1969 it transferred and assigned the note to the Manufacturer's National Bank.

On June 16, 1969, the trial court granted the petition of Martin C. and Vivian Faye [1] for leave to appear since the trust deed relating to the real estate and note securing it had been assigned to Manufacturer's National Bank as agent for the Fayes. In their answer to Case's complaint, the Fayes denied any knowledge of a contract between Case and Hyde Park or that Hyde Park was general contractor for the real estate, and, alleged that Case's claim was inferior to the lien of the trust deed.

On July 1, 1969, the Fayes filed their complaint to foreclose the trust deed against, among others, American as trustee under Trust No. 22916, Case, Leroy J. Snitoff (hereinafter "Snitoff") and various subcontractors. (Cause No. 69 CH 2330.) The Fayes brought suit in their alleged capacity as "legal holders of the Note secured by the said Trust Deed."

---

[1] In this opinion "Faye" refers to Martin C. Faye; "Mrs. Faye" refers to Vivian Faye; and "Fayes" refers to both Martin C. Faye and Vivian Faye.

In its answer to this complaint, Case claimed it did not have sufficient knowledge to admit or deny the information concerning the mortgage (trust deed) but denied the Fayes' allegations of their paramount lien as holders of the note. Case alleged as affirmative defenses: (1) the priority of its mechanic's lien over the lien of the trust deed, and (2) that the Fayes, Snitoff, and American as trustee under Trust No. 22916 knowingly permitted a contract to be entered into with Case and that $63,022.11 had been due to Case since May 5, 1968. Replying to these affirmative defenses, the Fayes again asserted the superiority of the lien of the note and trust deed and denied any knowledge of a contract between Hyde Park and Case.

The trial court consolidated Case's action to foreclose the mechanic's lien with the Fayes' action to foreclose the trust deed.

On April 17, 1970, Snitoff filed both an answer to the complaint to foreclose the trust deed and a counterclaim. The essence of Snitoff's answer—joined in by Hyde Park—was a denial of the Fayes' right to foreclose the trust deed since, it was alleged, the Fayes were nominees for others and the note was being held in trust for the benefit of Snitoff, Hyde Park, and others. Snitoff's counterclaim alleging, *inter alia,* an oral agreement between himself and Martin Faye and Faye's breach of that agreement will be dealt with more specifically in a subsequent portion of this opinion.

During the proceedings, M. E. Stein & Company (hereinafter "Stein") filed its cross-complaint to foreclose a junior trust deed against Snitoff and Hyde Park. Snitoff followed by filing a counterclaim against Faye and Stein alleging that, at the instance of Faye, he negotiated with Stein for a junior mortgage loan against the premises; that Stein charged an usurious rate of interest on the loan; and that Faye conspired with Stein to charge the alleged usurious interest and, thus, breached his fiduciary duty to Snitoff as a joint venturer. In answer to Snitoff's counterclaim, Stein admitted extending a second mortgage loan on the property, requested that the allegations of usury be stricken since the loan was made to a corporate trustee and, thus, was not controlled by the usury laws, and denied any conspiracy with Faye. Faye's answer to the counterclaim, in essence, mirrored Stein's answer.

Having conducted extensive hearings on these matters, the trial court entered its decree of foreclosure wherein it ordered as follows: that all the material allegations in the Fayes' complaint to foreclose the trust deed were true and proven; that, by virtue of the trust deed and note secured thereby, certain costs, fees, and advancements were due to the Fayes; that a number of proven mechanic's liens were subordinate to the lien of the trust deed; that Case had proven and was entitled to a mechanic's lien in the amount of $63,022.11 but that Case's work, labor,

and materials had enhanced the premises only to the extent of $30,000; that this amount plus 5% interest from April 19, 1968, to date of decree (or $34,577.70) was entitled to priority over the lien of the Fayes for principal, interest, and advancements but subordinate to their lien for costs and expenses; that the balance due Case plus interest (or $38,-119.57) was subordinate to the lien of the trust deed and all costs, fees, and advancements due thereunder; that Stein's encumbrance was subordinate to the lien of the Fayes and each mechanic's lienholder; that the material allegations in Snitoff's counterclaim were not proven and the counterclaim was dismissed; and that the rights and interest of Snitoff, Hyde Park, and others were subject to the liens of the Fayes, the mechanic's lien claimants set out in the decree, and Stein's junior encumbrance. The decree further provided for a public sale of the real estate by the sheriff and specified the priority of the proceeds.

Case subsequently filed its notice of appeal, stating that it appealed from the decree insofar as the decree subordinated Case's mechanic's lien to the lien of the first trust deed and costs, fees, and advances further found due therein.

Snitoff filed a motion to vacate the decree of foreclosure and that motion was denied.

The Fayes cross-appealed from that portion of the decree which gave part of Case's mechanic's lien priority over the Fayes' lien for principal, interest, and advancements and the portion of the decree granting distribution of proceeds from the sheriff's sale to Case before the Fayes had been reimbursed in full for principal, interest, and advancements.

Snitoff appealed from both the order denying his motion to vacate the decree of foreclosure and from the court's finding that he had not proved the allegations of his counterclaim.

■■ The records of this court indicate that Hyde Park did not file any notice of appeal or cross-appeal. Illinois Supreme Court Rule 303 (Ill. Rev. Stat. 1969, ch. 110A, par. 303) sets forth the requirements for appeals from final judgments of the circuit court in civil cases. It is a fundamental requirement that the filing of a notice of appeal or cross-appeal within the period as set forth in the rule is mandatory and jurisdictional.

Notwithstanding Hyde Park's failure to comply with Rule 303, there has been filed in this court briefs and motions in which Hyde Park has been identified as a "Defendant-Appellant." This procedure cannot breath life into a party not properly before this court. Having failed to file a timely notice of appeal, this court lacks jurisdiction to consider Hyde Park's attack, as an appellant, on the judgment of the trial court. See *Theobault-Olson Co., Inc. v. Petta* (1st Dist. 1972), 6 Ill.App.3d 537, 286 N.E.2d 163.

## I.

Prior to the date set for oral argument of these appeals, Case filed with this court a stipulation between itself and Faye to dismiss both the appeal of Case and the cross-appeal of Martin and Vivian Faye. Snitoff not being a party to this stipulation, this court granted him leave to file objections to the stipulation.

Snitoff and Hyde Park, in their objections, characterize the settlement as "conjecture  *  *  *  possibilities and probabilities." The gist of their objections is based on the fact that Snitoff and Hyde Park were not informed as to the basis of the settlement.

In reply to the said objections, Case, by way of an affidavit, presented to this court a suggestion that the subject property was sold on March 29, 1971, to N. Field, Inc. (not a party to this litigation), for non-payment of real estate taxes. A tax deed for said property to N. Field, Inc., is dated May 31, 1973, and recorded with the recorder of deeds of Cook County, Illinois, on June 8, 1973.

Although we find no error in that portion of the decree which subordinated part of Case's mechanic's lien to the lien of the trust deed and that portion which gave priority to part of Case's mechanic's lien over the Fayes' lien for principal, interest, and advancements, we grant the motion of Case that its appeal against the Fayes and the cross-appeal of the Fayes against Case be dismissed without costs and that the surety bond filed by Case, as a supersedeas appeal bond, be discharged.

## II.

We turn now to Snitoff's appeal from the dismissal of his counterclaim and from the trial court's finding in favor of the Fayes. The Fayes failed to file a brief in this matter but this court may nonetheless consider the merits of the appeal. *Daley v. Jack's Tivoli Liquor Lounge* (1969), 118 Ill.App.2d 264, 254 N.E.2d 814, in an opinion by Justice Robert English, provides a learned and exhaustive review of many cases wherein briefs of an appellee are not filed in this court. As Justice English said (p. 272):

> "[W]e now conclude that the avoidance of injustice and the doing of substantial justice are concepts sufficiently sound as standards of judicial function to require their application to all cases without any process of selection."

In this case, the trial court patiently sat through hours of testimony. A lengthy order was entered resolving the complicated issues. To allow that effort and work to be "defaulted" because the winner in the court below does not file a brief would strike a serious blow at the efforts and integrity of the judicial system. This is not to suggest we condone the

failure of an appellee to file a brief, as short as it might be, in support of the trial court's order.

We note that Snitoff raises a number of issues for our review, to wit: whether Faye agreed to forebear any collection of the note secured by the trust deed; whether, in purchasing the note, Faye acted as trustee for Snitoff; and whether Faye's institution of a foreclosure proceeding was so wilful and malicious a breach of Faye's obligation as to entitle Snitoff to punitive and exemplary damages. In light of the trial court's finding though, that "the material allegations in the counterclaim of Lee J. Snitoff were not proven," we are of the opinion that the only issue remaining for this court's consideration is whether there was sufficient evidence to support the trial court's finding. Resolution of this issue necessitates a brief recapitulation of the record as to the facts giving rise to the actions that form the basis of this appeal.

During the summer of 1965, Snitoff noticed a piece of property at 5400 S. Hyde Park Boulevard and, having just constructed a condominium across the alley, decided he would try to develop the new site in the same manner. In September or October of the same year, Snitoff determined that the purchase price of the land was $300,000, spoke to the Fayes, and they orally agreed to pursue the venture together. Faye and Snitoff agreed each would contribute $30,000 toward the purchase price; that Snitoff would obtain financing for the $240,000 balance; that profits would be split on a 50-50 basis; and that Snitoff would handle construction of the building while Faye would handle advertising and promotion.

Snitoff's efforts to secure financing failed, whereupon, Faye assumed the task and approached American where the loan officer refused to lend them any amount in excess of 50% of the value of the land or $150,000. The following series of transactions then took place in order to effect the purchase of the property:

1. American became the fee simple titleholder of the real estate as trustee under Trust No. 22916;

2. Faye and Snitoff each contributed $30,000 to be applied against the purchase price;

3. Faye arranged for first mortgage financing in the form of a land loan, and additional financing, aggregating $240,000 with the land loan; said land loan was for $150,000 and was secured by a first mortgage by American as trustee under Trust No. 22916 to the Chicago Title and Trust Co. and recorded February 8, 1966 as Document No. 19734110; said additional financing took the form of a loan in the sum of $90,000 secured by a stock trust established by Mrs. Faye. All of the above loans were further secured by Faye and Snitoff's assignment of their beneficial

interest in Trust No. 22916 (the land trust), as a pledge to American in its individual capacity.

Thereafter, to resolve the conflicting allegations in Snitoff's counterclaim and Faye's answer, the testimony at the hearing pertained to arrangements for the design, construction, advertising, promotion and sale of the proposed high-rise and units therein; whether Faye was to make additional money contributions; whether Snitoff was to sell Faye's interest; the expenses incurred by Snitoff; and the efforts to secure additional financing.

Snitoff claimed that some time in October 1968, after negotiations with Faye on the matters referred to above, they entered into an oral agreement. This alleged oral agreement covered many points, but the principal ones which go to the heart of Snitoff's contention are that, in consideration for Snitoff paying Faye $169,000 on account of Faye's indebtedness, Faye was to arrange a refinancing of the $150,000 first mortgage indebtedness, and, that Faye agreed not to foreclose the $150,000 mortgage for a 5-year period unless one of the two following conditions occurred prior thereto:

- (i) sale of the premises by Snitoff at a price satisfactory to Snitoff; or
- (ii) first mortgage financing was obtained by Snitoff in an amount deemed sufficient by him to complete the construction of the high-rise condominium project and provide funds to discharge the $150,000 first mortgage balance.

Responding to this alleged oral agreement, Faye denied its existence, admitted only that he and Snitoff undertook to deliver a general release to each other, and further maintained that the relationship of the parties had been set forth in a memorandum of the transaction dated October 30, 1968 filed as "Exhibit B" with objections filed by the Fayes. Most particularly, Faye denied having ever agreed with Snitoff or any other person not to foreclose the $150,000 mortgage for a 5-year period.

Snitoff then alleged an oral agreement with Marvin Lundy whereby Faye's and Snitoff's beneficial interest in the land trust would be assigned to Lundy to secure his $123,000 contribution to the project. Faye denied this allegation stating that the assignment of their beneficial interest to Lundy was an "outright purchase" by him.

Snitoff further alleged that, pursuant to the oral agreements, Lundy paid $103,000 and Snitoff contributed $46,000 to pay American for purposes of discharging the $70,000 balance of principal and $9,000 interest on the $90,000 note (after which the bank released Faye's collateral) and to reimburse Faye for his initial $30,000 investment and subsequent

contributions. Faye responded that these matters were set forth in certain exhibits attached to the objections previously filed.

Both Snitoff and Faye agree that they then each assigned their beneficial interest in the land trust to Lundy; that American released to Faye his collateral pledged for the original $90,000 personal loan; that Faye by his wife deposited with American a certificate of deposit for approximately $70,000 so as to induce the bank to retain and extend the $150,000 mortgage.

Snitoff then alleged that approximately 6 months later, in response to American's request to Faye that he arrange to have the mortgage purchased, Faye asked Peoples National Bank (hereinafter "Peoples") and Sam Hillman (chairman of the board of Peoples) to purchase said mortgage. Faye denied the allegations stating the fact to be that American had notified both Snitoff and Faye that it would sell the collateral upon default of the obligation.

Snitoff next alleged that, in May or June 1969, American sold the $150,000 mortgage to Peoples, to Sam Hillman individually, to Faye individually, or possibly to Faye as an undisclosed agent for Hillman, himself, and/or possibly others, and that he believes Faye did not have the cash himself to acquire the mortgage notwithstanding Faye's assertion that he and his wife are the holders of the notes secured by said mortgage (trust deed). Faye, on the other hand, asserted that American did sell the mortgage to the Fayes in compliance with guarantees given by Faye and Snitoff upon the last extension of the due date of the note; and that, although he and his wife were without the cash to acquire the mortgage, they were able to obtain financing to do so.

In conclusion, Snitoff urged the court to enjoin Faye from attempting to sell, assign, transfer, pledge, or deliver the note secured by the mortgage without first endorsing upon it that any such disposition is subject to the rights of Snitoff under his contract and further requested a decree for specific performance to compel Faye to hold the note for a period of 5 years from October 28, 1968.

■■ Having alleged a number of oral contracts as the basis of his right to relief, Snitoff bore the burden of establishing the existence of those agreements (*C. Iber & Sons, Inc. v. Grimmett* (1969), 108 Ill.App.2d 443, 248 N.E.2d 131). At trial, Snitoff offered no evidence of the alleged agreements other than his own testimony. Martin Faye, on the other hand, denied having made any of the oral agreements alleged by Snitoff. Presented with the inevitable issue of fact, the trial court found in favor of the Fayes.

■■ As a general rule, findings of the trial court in nonjury cases should

be given due weight and consideration (*Stephenson v. Kulichek* (1951), 410 Ill. 139, 147, 101 N.E.2d 542) and will not be disturbed on review unless palpably wrong or against the manifest weight of the evidence (*Brown v. Commercial National Bank* (1969), 42 Ill.2d 365, 371, 247 N.E.2d 894). In our review of the record, particularly in view of the fact that Snitoff bore the burden of proof in this matter, we have found no evidence offered by Snitoff at trial to persuade us that the trial court's findings pertaining to Snitoff were erroneous.

Subsequent to the date set for oral argument, Hyde Park and Snitoff filed in this court a motion, based on the failure of Faye to file a brief, (i) to declare as moot the issue as to whether Faye can foreclose, (ii) to declare the other issues as confessed by Faye and (iii) to remand the cause to the trial court for such other proceedings as may be appropriate. We have previously indicated that Hyde Park is not properly before this court. As to Snitoff, all of said motions are herewith denied.

For all these reasons the (1) appeal by case and cross-appeal of Fayes in cause 68 CH 2441 from the circuit court of Cook County is dismissed; and (2) that portion of the judgment of the circuit court of Cook County relative to cause 69 CH 2330 is affirmed.

STAMOS and LEIGHTON, JJ., concur.