**J. P. STEED, Plaintiff,**

**v.**

**CENTRAL OF GEORGIA RAILWAY COMPANY, Defendant-Third Party Plaintiff-Appellee,**

**v.**

**RIEGEL TEXTILE CORPORATION, Third Party Defendant-Appellant.**

**No. 74–3157.**

United States Court of Appeals, Fifth Circuit.

April 5, 1976.

Rehearing and Rehearing En Banc Denied June 28, 1976.

James E. Clark, Birmingham, Ala., for Riegel Textile Corp.

W. H. Sadler, Jr., Birmingham, Ala., for Central of Georgia.

Al G. Rives, Birmingham, Ala., for J. P. Steed.

Before GEWIN and AINSWORTH, Circuit Judges, and MARKEY,* Chief Judge.

MARKEY, Chief Judge:

In this diversity case, third party defendant Riegel Textile Company (Riegel) appeals from a directed verdict in the total amount of $469,558.75 on the motion of third party plaintiff Central of Georgia Railroad Company (Central). Judgment was entered in accordance with findings of fact and conclusions of law entered contemporaneously therewith. We affirm.

### Background

This suit is based on the indemnity clause of a Side Track Agreement (agreement), dated April 24, 1948, in effect between Riegel and Central at the time of the accident. The cause arose on December 30, 1966, when J. P. Steed, a trainman employee of Central was injured while riding on the side of the lead end of a cut of cars which were being shoved along a spur track owned and maintained by Riegel at Riegel's plant in Trion, Georgia. The car derailed causing Steed to be caught between the side of the car and a loading platform which ran parallel to the track. Steed's left leg was amputated below the knee and his right leg had multiple fractures.

On March 1, 1967, Steed filed a Federal Employers' Liability Act (FELA) suit against Central in the Circuit Court of Jefferson County, Alabama. His first count charged the railroad with negligence of its officers, agents or employees while acting within the line and scope of their employment or by reason of a defect or insufficiency in its cars, engines, appliances, machinery, track, roadbed, works or other equipment. A second count charged negligence in failing to exercise reasonable care to furnish or maintain a reasonably safe place to work.

Central sent Riegel a notice of the suit and a request to defend. On December 9, 1968, anticipating its liability to Steed,

---

* Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

Central filed a third party complaint against Riegel, claiming under the indemnity clause of the agreement. The agreement provides in pertinent part as follows:

> 2. The tenant (Riegel) will pay for, own, maintain the entire track from the point of switch to the end of the track. . . .
>
> \* \* \* \* \* \*
>
> 4. If the tenant fails to maintain said track in safe operating condition as prescribed by the Railway, the Tenant agrees that the Railway may put it in repair at the Tenant's expense, or may discontinue operating thereover.
>
> \* \* \* \* \* \*
>
> 9. The Tenant also agrees to indemnify and hold harmless the Railway from loss, damage or injury from any act or omission of the Tenant, its employees or agents, to the person or property of the parties hereto and their employees and if any claim or liability other than from fire shall arise from the joint or concurring negligence of the parties hereto, it shall be borne by them equally.

On Riegel's petition, the entire case was removed to the federal court, which thereinafter entered an order remanding the original complaint to the state court but retaining jurisdiction over Central's third party complaint for indemnification. We affirmed, *Central of Georgia Railway Co. v. Riegel Textile Corp.,* 426 F.2d 935 (5th Cir. 1970).

The trial of the FELA case in the state court resulted in a judgment against Central for $500,000, which was reduced by remittitur to $300,000 and accepted by Steed. On appeal, the Alabama Supreme Court affirmed, *Central of Georgia v. Steed,* 287 Ala. 64, 248 So.2d 110 (1971). The railroad's liability to Steed having been established, the district court granted summary judgment for Central on its third party complaint. This court reversed. *Steed v. Central of Georgia Railway Co.,* 477 F.2d 1303 (5th Cir. 1973).

In the trial on remand, Central introduced the complete record of the state court trial, the deposition taken in this case of A. T. McLendon, its conductor; Rufus Everhart, its brakeman; James B. Long, who was Riegel's Safety Director at the time of the accident, none of whom testified at the Steed trial, and the deposition of W. A. Russell, its engineer who did testify in that trial. In addition, Central's acting trainmaster at the time of the accident, B. F. Griffin, testified in person. Riegel introduced two operating rules but offered no testimony. The excellent summary of the evidence set forth by the district court appears in the margin.[1]

---

1. The train on which Steed was working at the time of his accident was a local freight, No. 99, which operated between Cedartown, Georgia, and Chattanooga, Tennessee. The spur track of Riegel leads off of the railroad main line to a switch lead with two branch tracks, one known as the "coal track" and the other the "CFP track." The accident occurred on the "CFP track." The engine, with a boxcar and a tank car ahead of it, moved into the coal track and connected to three loaded and two empty cars. These cars were pulled from the coal track, the two empties placed on the CFP track and the three loaded cars returned to the coal track. The engine then pulled out to the switch lead and with four cars ahead of it began shoving the train down the CFP track to connect to a boxcar standing at the lower end of that track. This car had been placed there two days before by a crew of which Steed was a member.

J. P. Steed testified in the State court that at the time of the accident he was 22 years old; that he had been employed by the Central of Georgia as a trainman for about 2½ years, during which time he had performed some duty in and about the CFP track on 100 to 150 occasions. No car on which he had ridden had ever derailed on the CFP track nor had he ever heard of one having done so. Steed testified that on the occasion of the accident he was riding on the side step of the lead hopper car; that, by the use of a radio, he directed the train movement by calling to the engineer the distance in car lengths separating the lead car from the boxcar to be coupled. Steed testified that as the cars moved down the track, the track looked safe and its general appearance was the same as it always had been. He estimated the speed of the movement at 2 or 3 m. p. h. Steed said that he called out to the engineer that they lacked five car lengths, then

## Opinion

Riegel argues that the trial court's directed verdict must be reversed because it is based on the evidence on which the erroneously granted motion for summary judgment was based, supplemented only by the testimony of Griffin. Regarding that testimony, Riegel contends:

that this additional evidence from Griffin changes the circumstances already reviewed by this Court only in the sense that his ore tenus testimony, if anything, further controverts the factual issues which were withdrawn from the Jury.

We cannot agree. In the prior appeal, it was pointed out that this court, on the record then before it, could determine neither the facts considered important below nor the rationale supporting the grant of summary judgment. In the present appeal, the record includes Judge McFadden's memorandum decision in which he delineated the evidence and made findings of fact and conclusions of law. Moreover, at the trial on remand

four, three, two, at which point he heard rocks grinding, looked down and saw the wheels off the tracks. He tried to jump to the platform but was already caught between it and the car.

At the Steed trial, the deposition of Willie S. Wilbanks was read. He had been employed by the Riegel Company for 21 years. He was standing near a small boiler house near the CFP track. He did not see the car as it derailed, but heard Steed "holler", looked up and saw him caught between the car and the platform. He stated that he looked at the point of the derailment and saw "dirt and gravel" which covered the rails and expressed the opinion that trucks which used the road bed in moving to and from the area had knocked the dirt up on the rail. According to his testimony, no crew member other than Steed was in a position to see the debris. The speed of the movement, according to Wilbanks, was about the same as on prior occasions which he estimated was 5 to 10 m. p. h.

The engineer, W. A. Russell, who testified in the Steed trial and whose deposition was read in this trial, stated that as the cut of cars moved down the CFP track their speed was 2 or 3 m. p. h.; that he heard Steed call out "5," "4," "3" car lengths, but did not hear him call out "2" car lengths and that after he moved about one more car length and did not hear from Steed he applied his brakes and stopped within 4 or 5 feet. Russell further testified that at the speed the cars were moving, there was nothing unusual about his not having heard Steed call out "2" car lengths. He did not look at the condition of the rails after the accident, his attention being centered on Steed and his condition.

Mr. C. P. Shell, Jr., testified in the Steed trial. He was trainmaster of the Cedartown district which included the Riegel plant at Trion, Georgia. At the time of Steed's accident, he was sick and B. F. Griffin was acting in his place. As trainmaster he visited the Riegel plant four or five times a year and had observed the condition of the CFP tracks. To his knowledge, no repairs had been made to that track by the Central of Georgia.

The deposition of the conductor, A. T. McLendon, was read in this trial. As conductor, he directed the movement of the cars into the coal and CFP tracks. He testified that at no time during the switching operation was he at a point where he could observe the track where the accident occurred. He made no determination of what caused the derailment and so stated in his report. He testified he did not look under the car to determine what actually caused the wheels to go off the rail.

The deposition of brakeman, Rufus Everhart, was read in this trial. He did not see the area of the derailment prior to the accident and at the time it occurred he was on the third car from the end knocking off hand brakes. He did not see the condition of the rail which caused the derailment.

The deposition of James P. Long, Riegel's safety director at the time of Steed's accident, was read in this case. He was familiar with the provisions of the contract between Riegel and the Central of Georgia. The track in question was cleared by Riegel as the need arose as determined by Riegel's safety inspectors, members of its safety committee or by the witness. The day before the accident the tracks were immersed in water; the last time he saw them clear was two days before the accident. Long further testified that trucks of necessity had to drive down the railroad track to get to the area where construction work was going on.

B. F. Griffin, the acting trainmaster, testified in person at the Steed trial and in this trial. He arrived at the scene about four hours after the accident. He testified that he found dirt, mud and rocks which covered the rails for a distance of 4 or 5 feet and that there were markings in the debris where the wheels had mounted the rail. He inspected the wheels of the car with a flange gauge and found that there were no defects in the flanges. He also found the side steps and the grab irons were intact; they were not bent or loose. Referring to records of the railroad, he testified that two cars had been moved out and one car in on the CFP track two days before Steed's accident.

Riegel had opportunity to conduct a searching cross-examination of Griffin concerning his investigation of the accident. In the prior appeal, Riegel argued that summary judgment denied him that opportunity. For these reasons, Riegel's effort to equate this appeal with that which considered the summary judgment must fail.

Nor can we agree with Riegel that Central must show negligence on the part of Riegel constituting the proximate cause of Steed's injury. In referring to the agreement, which provides that Central be indemnified for "loss, damage or injury from any act or omission of the Tenant," Riegel would have us equate "any act or omission" with common-law negligence.

■ The trial judge found that there was dirt and debris covering the track which Riegel was under a *contractual duty* to maintain, and that the presence of the dirt and debris was the proximate cause of Steed's accident. No substantial evidence was offered to contradict those findings. It was further concluded that Riegel's liability to Central, under the indemnity agreement, must be determined by the law making Central liable to Steed. In other words, if Central was found liable to Steed in the prior action based upon its nondelegable duty to provide a safe place to work, then Riegel would be liable under the indemnity agreement. The position of the trial judge on this point is correct and finds support in the case law.

In *Chicago R. I. & P. R. Co. v. Dobry Flour Mills, Inc.*, 211 F.2d 785, 788 (10th Cir. 1954), the court commented with regard to an identical indemnity agreement:

> We construe the "acts or omissions" referred to in the indemnity clause of the contract to mean the wrongful or negligent acts by Dobry (the industry) which would create liability on the part of the Railroad. Consequently, under the provisions of the contract Dobry's liability is to be determined under the law which would make the Railroad liable to Fruit (the employee),

and not upon Dobry's common law liability . . . .

■ Riegel refers to the third party complaint wherein Central alleges that the accident in which Steed was hurt "occurred as a proximate result of the negligence of Riegel Textile Corporation in placing debris, or permitting debris to remain, on the track covered by said Track Agreement." But the argument that the quoted allegation of its initial third party complaint made it encumbent upon Central to prove that "defendant negligently failed to exercise reasonable care" is not on point. The pre-trial order herein supplemented the allegations of the initial complaint and governed the pattern of the lawsuit. Rule 16, F.R. C.P. See *Case v. Abrams*, 352 F.2d 193 (10th Cir. 1965).

■ The trial judge was also correct in concluding that Central's liability to Steed, as determined in the state court action, was based on its nondelegable duty to provide its employee with a safe place to work pursuant to the standards of the FELA. No jury issue was raised in that regard. Both counts of Steed's complaint involve the track and roadbed condition as proximate cause of the injury. Riegel could have taken over and defended Steed's charges in that action. Having chosen not to do so, it is bound by the result, absent fraud or collusion. *Miller and Company of Birmingham v. Louisville and Nashville R. Co.*, 328 F.2d 73, 78 (5th Cir. 1964). We conclude, therefore, that the state court's determination that Steed's conduct should not bar his recovery from Central must also be binding on Riegel.

Riegel alludes also to the agreement provision which reads, "[i]f any claim or liability other than from fire shall arise from the joint or concurring negligence of the parties hereto, it shall be borne by them equally," and contends that it limits Riegel's liability to 50% of Central's loss "if [Central's] negligence contributes to its liability." That general proposition was rejected in *Booth Kelly Lumber Co. v. Southern Pacific Co.*, 183 F.2d 902 (9th Cir. 1950). There the court, in con-

struing an indemnity contract similar to the one before us, reasoned with respect to the indemnity paragraph:

Basic in any determination of the meaning of this whole paragraph is an understanding that when the parties contemplated that there might be claims for indemnity they must have been cognizant of the fact that in the ordinary case the occasion for seeking indemnity would not arise unless the indemnitee had himself been found guilty of some fault, for otherwise no judgment could have been recovered from him. That this is typically true is recognized in the comment under Section 95, Restatement on Restitution, as follows: "In all of these situations the payor is not barred by the fact that he was negligent in failing to discover or to remedy the defect as a result of which the harm was occasioned; in most of the cases it is because of this failure that he is liable . . . ." [183 F.2d at 907.]

The Georgia Court of Appeals is in accord. *Georgia Ports Authority v. Central of Georgia Railway Company*, 219 S.E.2d 467 (decided Sept. 3, 1975, *cert. denied* Sept. 29, 1975).

■ Thus, Riegel's reliance on the mere fact that Central was liable to Steed cannot bring the "equal shares" provision of the agreement into play. Central's liability to Steed, as indicated above, was based on its nondelegable duty to provide its employee with a safe place to work.

■ Nor was there a jury issue established with respect to negligence on the part of Central which could have come within the "equal shares" provision of the agreement. It is clear that the accumulation of dirt and debris on the track area for which Riegel was responsible was the cause of the derailment and subsequent injury and that, prior to the derailment, no member of Central's crew, other than Steed, saw or was in a position to see the accumulation which caused the derailment. There was no substantial evidence from which a jury

might have inferred that the engineer was guilty of any negligence which proximately caused the injury. It is additionally clear that there were no defects in the derailed car which might have caused or contributed to the derailment. There is thus no substantial evidence on any issue from which a jury might have determined that Central was entitled to anything other than full indemnity from Riegel.

■ We are also in agreement with the trial court's decision upholding Central's right to recover the medical expenses it paid to Steed. Central was under a legal duty to pay those expenses in mitigation of damages.

Accordingly, the decision of the district court is in all respects affirmed.