HAROLD BEAN, Plaintiff-Appellee, *v.* NORFOLK AND WESTERN RAILWAY COMPANY, Defendant and Third-Party Plaintiff-Appellee.—(UNION TANK CAR COMPANY, Third-Party Defendant-Appellant.)

Fifth District   No. 79-131

Opinion filed May 16, 1980.—Supplemental opinion filed on denial of rehearing June 11, 1980.

Dennis E. Rose, of Donovan, Hatch & Constance, of Belleville, for appellant.

Karl D. Dexheimer, of Pope and Driemeyer, of Belleville, for appellee Norfolk and Western Railway Company.

Jon G. Carlson, of Chapman and Carlson, of Granite City, for appellee Harold Bean.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Third-party defendant, Union Tank Car Company (hereinafter UTLX), appeals from judgments entered in favor of plaintiff, Harold Bean, against defendant, Norfolk & Western Railway Company (hereinafter Norfolk & Western), and in favor of third-party plaintiff, Norfolk & Western, against UTLX in the amount of $350,000. The issues on appeal are (1) whether the trial court erred in denying the motions of UTLX and Norfolk & Western for a medical examination of the plaintiff and for reconsideration and continuance in reference thereto; (2) whether the trial court erred in denying the motions of UTLX to continue the entire case or to sever and continue the third-party claim due to the unavailability of certain witnesses; (3) whether the motions of UTLX for a directed verdict were erroneously denied; (4) whether the trial court erred in failing to limit the contractual indemnity liability of UTLX to Norfolk & Western to 50%; (5) whether evidence of custom and usage was properly excluded; (6) whether the trial court erred in giving and refusing certain jury instructions; and (7) whether the amount of the verdict was excessive. We affirm the judgment of the circuit court.

Plaintiff, Harold Bean, was employed by Norfolk & Western as an operator-telegrapher at its Edwardsville office on May 5, 1976. Plaintiff had received a telephone call from UTLX that its tank car No. 25838 was to be taken to Nashville, Tennessee, although the date of this call was unclear. Plaintiff telephoned a supervisor to have a carman inspect the journal boxes on the car and prepare a switch list. A journal box is a brass fitting on both sides of the axle containing oil which lubricates the axle and prevents it from shearing off and derailing the train. A switch list is prepared in order to facilitate the switching crews in the assemblage and moving of trains. However, no carman was available and plaintiff was instructed to check the car himself.

Plaintiff drove to the area where the car was located. On the date in question, a lease or "siding" agreement was in effect by which UTLX leased certain sections of track and the surrounding land for the storage of its cars. Car No. 25838 was owned by UTLX and located on the "Old Passing" track, a portion of track covered by the lease agreement. The car was not moving at the time plaintiff engaged in his inspection during which he discovered sections of railroad ties on the car. Plaintiff climbed on top of the car and threw them off. As he was descending a ladder on the south side of the car, his foot slipped from the bottom rung, also called the "sill step" or "stirrup," and he fell to the ground. While on the ground plaintiff noticed a dirty, yellow-green grease on the sole of his shoe and approximately one-quarter inch thick spread evenly across the stirrup. Following his fall he experienced pain in his lower back, buttocks and right leg. After lying on the ground a short time, plaintiff got to his

feet and wiped the grease off the stirrup with a rag. He testified that he did not want a switchman to jump on the car while it was moving and fall because of the grease. He placed a rock in the rag and threw it away from the tracks.

Plaintiff was treated initially by a Norfolk & Western physician, who diagnosed his injury as a bruised hip. Plaintiff returned to work in June and July, but saw his family doctor because his back, hips and legs were causing him pain. In August 1976, plaintiff went to Dr. Heidke at the suggestion of his attorneys. Dr. Heidke diagnosed cervical and lumbar vertebrae injury and began treatment. However, with the pain still continuing, Dr. Heidke referred plaintiff to Dr. David Schreiber, who testified at trial. Dr. Schreiber diagnosed plaintiff's injuries as rediculopathies or four pinched nerves in the cervical and lumbar vertebrae area caused either by a herniated disc or the stretching of the nerves during the fall. It was Dr. Schreiber's opinion that plaintiff was totally and permanently disabled, being precluded from doing anything that could be considered work. Dr. Schreiber also opined that the fall was the cause of plaintiff's medical condition. This testimony was uncontradicted.

A UTLX manager, Steve Babick, testified that car No. 25838 arrived in Edwardsville on March 31, 1976, according to his records. He further stated that it was UTLX's decision to move the car to Nashville on May 5, 1976, but it was not custom or practice for any UTLX employee to inspect a car before it was removed from Edwardsville because no company employee was stationed there. James Settle, a Norfolk & Western assistant car foreman, also testified that he made an inspection of car No. 25838 on May 6, 1976, in Madison, Illinois, where the car had been moved. Mr. Settle stated that he found no grease or foreign matter on the sill step or other portions of the car.

The siding agreement was introduced into evidence, and the pertinent clauses read as follows:

"14. The Industry will indemnify and hold harmless the Railway for loss, damage or injury from any act or omission of the Industry, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said track; and if any claim or liability other than from fire arises from the joint or concurring negligence of both parties hereto it shall be borne by them equally.

15. (a) The Railway shall not be liable as common carrier or as bailee for any property loaded into any car on said side track until said car is attached or coupled to the engine or train by which it is to be moved from said side track toward its destination, and until

said car is so attached or coupled up, said car and its contents shall be deemed and held to be in possession of the Industry so far as liability for the safety and care thereof is concerned."

Following argument and instructions, the jury returned a verdict in favor of plaintiff and against Norfolk & Western in the amount of $350,000 on the Federal Employers' Liability Act claim against the railroad. The jury also found in favor of Norfolk & Western and against UTLX on the third-party indemnity claim in the full amount of said verdict. Post-trial motions of both Norfolk & Western and UTLX were denied. UTLX now appeals.

■■ We note at the outset a jurisdictional matter with respect to Norfolk & Western. While it filed a post-trial motion, it did not file a notice of appeal or cross-appeal; yet its brief before this court contains assertions of error which it argues call for reversal of the judgment in favor of plaintiff and against Norfolk & Western. It is clear that our Supreme Court Rules call for the filing of a notice of appeal as a fundamental jurisdictional matter. (Ill. Rev. Stat. 1977, ch. 110A, pars. 301, 303(a).) No other step is jurisdictional in the appellate process, but the filing of said notice within the requisite time period is mandatory. (*Danaher v. Knightsbridge Co.* (1978), 56 Ill. App. 3d 977, 979, 372 N.E.2d 862; *Case International Co. v. American National Bank & Trust Co.* (1974), 18 Ill. App. 3d 297, 300, 309 N.E.2d 750.) Thus, before we consider the merits of Norfolk & Western's contentions, we are duty bound to determine whether the appeal has been properly taken so as to invoke this court's jurisdiction. (*Artoe v. Illinois Bell Telephone Co.* (1975), 26 Ill. App. 3d 483, 484, 325 N.E.2d 698.) Having failed to file a notice of appeal, we are confined to the issues properly raised by appellant UTLX, and those attempted to be raised by Norfolk & Western are not before this court. *National Football League Properties, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.* (1975), 26 Ill. App. 3d 820, 821, 327 N.E.2d 247; *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, 610-11, 319 N.E.2d 336.

UTLX first contends that the trial court erroneously denied its motions for a medical examination of plaintiff and continuance to accomplish same. It argues that it was in the case only a short time before it was tried, exercised due diligence in seeking medical information and was prejudiced by the court's ruling. The record shows that the initial complaint was filed on August 20, 1976, and the third-party complaint by Norfolk & Western against UTLX was filed on July 11, 1977. On March 9, 1978, UTLX filed supplemental interrogatories requesting plaintiff to bring his earlier interrogatory answers up to date, which was done on April 21, 1978. UTLX argues that it learned of plaintiff's one-week hospitalization in January 1978 for the first time in these answers. In mid-March 1978, this case was set on the April jury docket. UTLX filed notices

of depositions of Dr. Heidke and Dr. Schreiber on March 21, 1978, said depositions to be taken on May 3 and May 17, respectively. UTLX argues that it was only at Dr. Schreiber's May 17 deposition that it learned of the total and permanent disability diagnosis of plaintiff. The motion for a physical examination, scheduled for June 13, was filed on May 23, 1978, by Norfolk & Western and joined in by UTLX, the examining physician being one of their choosing. On June 8, the trial court denied the motion. On June 9, a motion to reconsider and for continuance was filed by Norfolk & Western, and on June 16 a motion to continue was filed by UTLX. Both motions were denied by the trial court on June 16. The trial of this case began on June 19, with UTLX arguing that numerous cases ahead of this one on the docket were bypassed in order to try this case. Plaintiff responds that not until after the case was set on the jury docket did UTLX engage in the discovery of the treating physicians, even though plaintiff had listed both Doctors Heidke and Schreiber in answers to interrogatories on October 6, 1977. Thus, plaintiff argues, UTLX was not diligent in pursuing the medical information.

■■ The Supreme Court Rules regarding such medical examinations of a party read in pertinent part as follows:

> "(a) Notice; Motion; Order. In any action in which the physical or mental condition of a party or of a person in his custody or legal control is in controversy, the court upon notice and *for good cause shown on motion made within a reasonable time before the trial*, may order the party to submit to a physical or mental examination by a physician suggested by the party requesting the examination, or to produce for such examination the person in custody or under legal control who is to be examined.
>
> ❊ ❊ ❊
>
> (c) Physician's Report. *Within 21 days after the completion of the examination, and in no event later than 14 days before trial*, the examining physician shall prepare duplicate originals of a written report of the examination, setting out his findings, results of all tests, made, his diagnosis and conclusions, and deliver or mail an original of his report and of all corrections, supplements, or additions thereto, to the attorney for the party requesting the examination and a duplicate original thereof to the attorney for the party examined or for the party who produced the person who was examined. The court may enforce compliance with this requirement." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 110A, par. 215.)

It is clear that under these rules, the trial court has wide discretion in determining what is good cause and what is a reasonable time before trial.

(*In re Conservatorship of the Estate of Stevenson* (1970), 44 Ill. 2d 525, 529, 256 N.E.2d 766, *cert. denied* (1970), 400 U.S. 850, 27 L. Ed. 2d 87, 91 S. Ct. 50; *Crown v. Village of Elmwood Park* (1969), 118 Ill. App. 2d 278, 282-83, 255 N.E.2d 47.) Dr. Schreiber's deposition was not taken until approximately seven months after he was initially listed as a treating physician in answers to interrogatories. This case had been set for trial in April and again was set on the June docket. The motion for a physical examination was filed on May 23, and the motion was denied on June 8. The trial began on June 19. Given these circumstances, we do not believe the trial court abused its discretion in denying the motion for a physical examination.

UTLX next contends that the trial court erred in failing to grant its motion to continue the entire case, or, in the alternative, to sever and continue the third-party claim due to the unavailability of certain witnesses. UTLX refers to one of its employees who was familiar with the lease agreement, the custom and practices between UTLX and Norfolk & Western, and the inspection of car No. 25838 prior to its coming to Edwardsville, but who had gone to Florida apparently on vacation the week of trial after he knew the case was on the trial docket. An ex-employee of UTLX, who was also knowledgeable regarding the inspection of the car, had not yet been located. The trial court felt that UTLX had made no concerted effort to have the former present at trial, even though he was a company official, and felt that further delays to find the latter would put the case "into July, where, you know, you're not going to have jurors, witnesses, lawyers or anybody else then. I have cases set but I don't anticipate any will be tried."

After being docketed in April, trial of this case was tentatively scheduled for June 12, 1978. These motions were first made on June 16, 1978, and denied the same day. Trial began on June 19. Section 59 of the Civil Practice Act states with respect to continuances:

"On good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment.

The circumstances, terms and conditions under which continuances may be granted, the time and manner in which application therefor shall be made, and the effect thereof, shall be according to rules." (Ill. Rev. Stat. 1977, ch. 110, par. 59.)

And Illinois Supreme Court Rule 231(f) (Ill. Rev. Stat. 1977, ch. 110A, par. 231(f)) clearly states:

"No motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay."

As plaintiff correctly notes:

"A litigant has no absolute right to have a case continued; it is a matter within the discretion of the trial court, and the court's decision will be disturbed on review only in instances where denial of the continuance results in a palpable injustice to the movant. Specially grave reasons for continuance are required if it is requested after the case has reached the trial stage. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.)" (*Montgomery v. Terminal R.R. Association* (1979), 73 Ill. App. 3d 650, 654, 392 N.E.2d 77.)

The trial court found that UTLX had not exercised due diligence in having its officer present at trial, and that delaying trial in order to search for the ex-employee would cause further postponement because of the summer schedule. Therefore, we do not believe the trial court abused its discretion in concluding that there was not sufficient excuse shown to justify the requested continuances or severance.

UTLX contends that under the lease agreement, the trial court erred in failing to limit its liability to 50% of the plaintiff's verdict. Paragraph 14 of the contract reads as follows:

"14. The Industry will indemnify and hold harmless the Railway for loss, damage or injury from any act or omission of the Industry, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said track; and if any claim or liability other than from fire arises from the joint or concurring negligence of both parties hereto it shall be borne by them equally."

As can be seen, paragraph 14 is divided into two parts: The indemnity clause, containing the "any act or omission" language, and the contribution clause, requiring 50% payment if the claim "arises from the joint or concurring negligence of both parties * * *." UTLX suggests that a finding of any joint or concurring negligence between it and the railroad automatically limits its liability to 50%, in effect reading the indemnity clause out of the contract. We find this interpretation to be erroneous.

Norfolk & Western's liability to plaintiff was based on its nondelegable duty under the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.* (1976)) to provide its employees with a reasonably safe place to work. However, the jury found UTLX to be under a contractual duty to keep the tank car free from debris, since it was leasing the Old Passing track and surrounding land from Norfolk & Western for storage of its own cars. Its failure to properly maintain the car was found to be the cause of plaintiff's injury. Therefore, under the indemnity clause of paragraph 14, UTLX owed Norfolk & Western total reimbursement because the acts and omissions referred to in that clause relate to action or

inaction by UTLX which would create liability on the part of Norfolk & Western. Since the railroad was found liable to plaintiff based upon its nondelegable statutory duty, UTLX is liable to indemnify Norfolk & Western because of its contractual duties to maintain the cars and pay if it does not. In other words, UTLX is liable to Norfolk & Western under the indemnity agreement if the conduct of UTLX made Norfolk & Western liable to plaintiff under the Federal Employers' Liability Act. *Missouri Pacific R. Co. v. International Paper Co.* (8th Cir., No. 79-1305, April 8, 1980), 618 F.2d 492, 495; *Steed v. Central of Georgia Ry. Co.* (5th Cir. 1976), 529 F.2d 833, 837, *cert. denied sub nom. Riegel Textile Corp. v. Central of Georgia Ry. Co.* (1976), 429 U.S. 966, 50 L. Ed. 2d 334, 97 S. Ct. 396; *Chicago, R. I. & P. R. Co. v. Dobry Flour Mills, Inc.* (10th Cir. 1954), 211 F.2d 785, 788, *cert. denied* (1954), 348 U.S. 832, 99 L. Ed. 656, 75 S. Ct. 55.

UTLX suggests, however, that the contribution clause which reads "if any claim or liability other than from fire arises from the joint or concurring negligence of both parties hereto, it should be borne by them equally" limits its liability to one-half of Norfolk & Western's loss, since "by the jury's own verdict negligence was found against the railroad in order for the plaintiff to recover." This theory was long ago rejected in *Booth-Kelly Lumber Co. v. Southern Pacific Co.* (9th Cir. 1950), 183 F.2d 902, 907, where a clause similar to the one at issue here was construed.

> "Basic in any determination of the meaning of this whole paragraph is an understanding that when the parties contemplated that there might be claims for indemnity they must have been cognizant of the fact that in the ordinary case the occasion for seeking indemnity would not arise unless the indemnitee had himself been found guilty of some fault, for otherwise no judgment could have been recovered from him. That this is typically true is recognized in the comment under Section 95, Restatement on Restitution, as follows: 'In all of these situations the payor is not barred by the fact that he was negligent in failing to discover or to remedy the defect as a result of which the harm was occasioned; in most of the cases it is because of this failure that he is liable * * *.'
>
> * * *
>
> In approaching a determination of the meaning of this whole paragraph, it appears to us, initially, that each part of the paragraph was intended to cover certain kinds or types of cases, and that each part refers to a situation different from that contemplated by the other. And in view of the fact that in most cases where demand for indemnity arises, the claimed indemnitee must have been found liable by reason of some negligence, we think it extremely unlikely that all such cases were intended to be

excluded from the operation of the first portion of the paragraph. Otherwise, this portion of the paragraph would have little or no application to any actual case."

Thus, it is clear that the indemnity provision, which was designed to cover the situation at hand, controls the amount of recovery between Norfolk & Western and UTLX. (*Anthony v. Louisiana & Arkansas Ry. Co.* (8th Cir. 1963), 316 F.2d 858, 866, *cert. denied* (1963), 375 U.S. 830, 11 L. Ed. 2d 61, 84 S. Ct. 74.) Norfolk & Western's liability to plaintiff, based on its nondelegable F.E.L.A. duty, does not make the contribution provision of the lease agreement operative (*Steed v. Central of Georgia Ry. Co.* (5th Cir. 1976), 529 F.2d 833, 838), and UTLX's reliance on active and passive negligence in invoking the joint and concurring negligence language of the "equal shares" provision is misplaced. (*Weyerhaeuser Steamship Co. v. Nacirema Operating Co.* (1958), 355 U.S. 563, 569, 2 L. Ed. 2d 491, 495, 78 S. Ct. 438, 442.) Accordingly, UTLX was not entitled to contribution from Norfolk & Western, but was properly held to indemnify the latter for the entire amount of the verdict.

■■ UTLX also argues that the trial court erroneously failed to grant motions for a directed verdict in its favor because there was not proof of notice to it of the grease on the sill step of the tank car. This argument is based on the language of the lease agreement that UTLX would hold Norfolk & Western harmless because of "any act or omission" which resulted in damage or loss to the railroad. UTLX equates "any act or omission" with any negligent act or omission and suggests that the failure to prove notice on its part absolves it of any negligence. However, UTLX concedes that the jury was instructed only on the contractual indemnity count of the third-party complaint and not active-passive negligence, and the courts have uniformly rejected such an interpretation of these agreements, holding that as between the indemnitee and indemnitor, the contractual duties and not those of the common law apply. (*Missouri Pacific R. Co. v. International Paper Co.* (8th Cir., No. 79-1305, filed April 8, 1980), 618 F.2d 492, 496; *Anthony v. Louisiana & Arkansas Ry. Co.* (8th Cir. 1963), 316 F.2d 858, 866; *Chicago, R. I. & P. R. Co. v. Dobry Flour Mills, Inc.* (10th Cir. 1954), 211 F.2d 785, 788; *Foster v. Pennsylvania R. Co.* (3d Cir. 1953), 201 F.2d 727, 731 n.6; *Booth-Kelly Lumber Co. v. Southern Pacific Co.* (9th Cir. 1950), 183 F.2d 902, 906.) This being the case, a directed verdict in favor of UTLX on negligence grounds could never have stood and said motions were properly denied.

■■ UTLX also complains that the trial court erroneously excluded evidence of custom and practice which was relevant to the interpretation of the lease agreement, even though it admits that the contract was not ambiguous. This evidence had to do with, among other things, the facts that UTLX had no personnel in the area of the Old Passing track, and had not made and was not requested by Norfolk & Western to make any such

inspections for the 13 years prior to the date of the accident. However, UTLX admits the general rule of law that evidence concerning custom and usage cannot vary or contradict the terms of written contracts.

> "The general rule provides that 'if the terms or provisions of a written contract are in any way uncertain or ambiguous, parol evidence of a custom or usage is admissible to explain them or aid in their interpretation and construction. Where the meaning of such terms is unambiguous and free from doubt, a custom or usage cannot be proved to explain the terms or provisions.' (ILP Customs and Usages, §8; *Ambarann Corp. v. Old Ben Coal Corp.*, 395 Ill. 154, 165, 69 N.E.2d 835; *Fifteenth Ave. Christian Church v. Moline Heat.*, 131 Ill. App. 2d 766, 265 N.E.2d 405.)" (*Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 794, 305 N.E.2d 236, *appeal dismissed* (1975), 60 Ill. 2d 529, 331 N.E.2d 65.)

The effort by UTLX to introduce the aforesaid evidence was a direct attempt to vary the unambiguous terms of paragraph 15 of the agreement, reading in pertinent part: "[U]ntil such car is so attached or coupled up, said car and its contents shall be deemed and held to be in possession of the Industry [UTLX] so far as liability for the safety and care thereof is concerned." Being in such possession, UTLX would be held under paragraph 14 to indemnify Norfolk & Western for its losses "from any act or omission of the Industry * * *." UTLX cannot seek to alter the clear, contractual terms regarding liability in the guise of interpreting the agreement on the issue of inspection. Therefore, the trial court properly ruled this evidence inadmissible.

■ UTLX further contends that the trial court erred in giving and refusing certain instructions. Initially we note that with respect to the railroad's instructions regarding duty and indemnity, UTLX either made no objection or only general objections at the instructions conference. Supreme Court Rule 239(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 239(b)) requires that the grounds for objections to instructions be particularly specified at the instructions conference. This being so, UTLX's arguments concerning these instructions have been waived.

■ UTLX further objects to plaintiff's instructions which were given. Plaintiff's instruction No. 4 presented the jury with the elements of damages which could be awarded. UTLX argues that the instruction did not contain a reference to the preexisting condition of arthritis Dr. Schreiber found in plaintiff's neck and back following the accident which could have affected the amount of damages. However, as plaintiff correctly points out, Dr. Schreiber stated that whatever arthritic condition plaintiff had did not relate at all to the injuries he suffered as a result of the fall in question. As to these injuries, Dr. Schreiber testified on cross-examination that "arthritis wouldn't cause this * * *." On redirect, he was

asked: "Is arthritis causing the pain that this individual experiences?" Dr. Schreiber's reply was as follows:

"No, sir, it doesn't pinch the nerve. We're talking about nerve root disease, we're not talking about arthritic pain. You know, if you have arthritis in your neck or arthritis in your back or arthritis in your shoulder people know that you have arthritis in your shoulder you have pain in your shoulder, if you have arthritis in your back you have pain in your back. This gentleman has redicular pain, he has numbness, he has loss of reflexes, he has EMG findings of pinched nerves. He has pinched nerves and that's the diagnosis. The arthritis is really not part of the diagnosis."

The instruction was properly given.

■■ UTLX also complains that plaintiff's instruction No. 5, which was Illinois Pattern Jury Instructions, Civil, No. 12.04 (2d ed. 1971) (hereinafter IPI Civil), relating to concurrent negligence as the proximate cause of injury, failed to include the second paragraph which reads:

"However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant."

The notes on the use of this instruction make it clear that "[t]he second paragraph should be used only where there is evidence tending to show that the sole proximate cause of the occurrence was the conduct of a third person." Since no such evidence exists in this case, there was no error in the instruction as given.

UTLX further argues that the trial court erred in refusing four of its instructions. One of these instructions related to certain Interchange Rules of the Association of American Railroads, which were never introduced into evidence. There being no such evidence, the instruction was properly refused. Two other instructions relating to the contributory negligence of the railroad were properly refused because such was not an issue in the third-party indemnity action. UTLX's proposed instruction No. 7, being IPI Civil No. 500.23 (1977 Supp.) and stating, "If you decide that the railroad is not liable to Harold Bean, you will have no occasion to consider either the question of damages or the question of reimbursement," was properly refused because IPI Civil No. 36.01 was given to the jury, and the notes on the use of the former instruction state that both instructions should not be given. In any event, in light of the other instructions given, failure to give instruction No. 7 did not affect the verdict, and any error was therefore harmless.

■■ UTLX and Norfolk & Western both contend that the railroad's proposed instruction No. 13 should have been given by the trial court. That instruction read as follows:

"You are instructed that any award made to Plaintiff as damages

in this case, if any award is made, is not subject to state or federal income taxes, and you should not consider such taxes in fixing the amount of any award made plaintiff, if any you make."

This issue arises because of the recent ruling of the United States Supreme Court in the case of *Norfolk & Western Ry. Co. v. Liepelt* (1980), ___ U.S. ___, 62 L. Ed. 2d 689, 100 S. Ct. 755, wherein it was held that a similar instruction should have been given in that particular case. As we stated at the outset, Norfolk & Western has not filed an appeal in this case and its arguments are not, therefore, before us. Likewise, UTLX has no standing to contest the failure to give this instruction because "[n]o party may raise on appeal the failure to give an instruction unless he shall have tendered it." (Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(2)(i).) Moreover, UTLX and Norfolk & Western failed to raise this point in their post-trial motions and are now precluded from pursuing it. Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(2)(iii); *Hammonds v. Inland Tugs Co.* (1979), 75 Ill. App. 3d 377, 379-80, 393 N.E.2d 1328.

■■ UTLX finally alleges that the verdict was excessive and the trial court should have granted a new trial or a remittitur. Plaintiff computed his past lost wages at approximately $26,000 and argued that his future wage loss would be between $216,000 and $230,000. He further argued that $100,000 would be inadequate to compensate him for the pain and suffering he would experience for the remainder of his life expectancy. The jury awarded him $350,000. UTLX argues, and properly so, that future lost earnings must be adjusted to their present cash value. But the jury was so instructed. The verdict returned by the jury was proper, notwithstanding the numerous possible verdicts suggested by counsel. As the court said in *Carraher v. Bacon*:

"There is * * * ample evidence in the record to support the general verdict on the basis of plaintiff's personal injuries, loss of work and pain and suffering. The amount of the verdict is largely within the discretion of the jury. (*Lau v. West Towns Bus Co.*, 16 Ill. 2d 442, 452 (1959).) Courts test the excessiveness of the jury verdict by questioning 'Whether or not the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience.' (*LeMaster v. Chicago Rock Island & Pacific R.R. Co.*, 35 Ill. App. 3d 1001, 1030 (1976).) The verdict is well within limits in our view." *Carraher v. Bacon* (1976), 43 Ill. App. 3d 16, 20-21, 356 N.E.2d 650.

Accordingly, the judgment of the circuit court of Madison County is affirmed.

Judgment affirmed.

JONES, P. J., and SPOMER, J., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE HARRISON delivered the opinion of the court:

This supplemental opinion is based on Norfolk & Western's petition for rehearing wherein it alleges that we were incorrect in holding in our opinion filed May 16, 1980, that it had failed to file a notice of appeal and thereby failed to preserve its points of error for review. While Norfolk & Western attached a copy of its "Notice of Separate Appeal" to its petition for rehearing, we point out that it failed to include the same in the record on appeal in violation of Supreme Court Rule 321 (Ill. Rev. Stat. 1977, ch. 110A, par. 321). However, in our discretion we now consider the points raised by Norfolk & Western.

We note that three of the issues raised by Norfolk & Western were disposed of in the original opinion. These have to do with the excessiveness of the verdict, the denial of a motion for a physical examination and for reconsideration and continuance in connection therewith, and a jury instruction relating to the effect of taxes upon any award to plaintiff. Finding that Norfolk & Western has presented no other substantial grounds upon which to dissuade us from our initial position, we abide by our holdings on these issues for the reasons stated in the May 16, 1980, opinion.

Norfolk & Western also contends that the jury was erroneously given plaintiff's instruction No. 4, which reads as follows:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damage proved by the evidence to have resulted from the negligence of the defendant. *The nature, extent and duration of the injury. The disability resulting from the injury.* The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries. The reasonable expense of necessary medical care, treatment, and services received and the present cash value of the reasonable expenses of medical care, treatment and service reasonably certain to be received in the future. *The value of earnings lost and the present cash value of the earnings reasonably certain to be lost in the future.*

Whether any of these elements of damages has been proved by the evidence is for you to determine." (Emphasis added.)

Norfolk & Western suggests that there was insufficient evidence to support a finding of damages regarding future medical expenses and lost earning capacity. It also seems to contend that the italicized portions of the instruction were subject to mitigation and were improperly included. ■■ However, at the instruction conference only the following objection was made by Norfolk & Western with respect to this instruction: "I don't

think there's any proof to all the elements of damage." This position was reiterated in the post-trial motion of Norfolk & Western with another irrelevant argument. It is clear that all of the grounds of objection should be particularly specified at the instruction conference and renewed in the post-trial motion. (Ill. Rev. Stat. 1977, ch. 110A, par. 239(b); *Mathis v. Burlington Northern, Inc.* (1978), 67 Ill. App. 3d 1009, 1011, 385 N.E.2d 780.) Thus, having failed to adequately specify the objections to the instruction and thereby preserve these grounds for appeal, this point has been waived.

For the reasons stated herein and in our opinion of May 16, 1980, the judgment of the circuit court of Madison County is affirmed.

Judgment affirmed.

JONES, P. J., and SPOMER, J., concur.