NATIONAL FOOTBALL LEAGUE PROPERTIES, INC., Plaintiff-Appellant, *v.* DALLAS CAP & EMBLEM MFG., INC., *et al.*, Defendants-Appellees.

(No. 59917;

First District (2nd Division)—February 25, 1975.

Kirkland & Ellis, of Chicago, for appellant.

Alter, Weiss, Whitesel & Laff, of Chicago, and Hoppenstein & Prager, of Dallas, Texas (Charles A. Laff, Howard B. Rockman, and Richard Eugene Dick, of counsel), for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

■■ This appeal arises from the issuance of a preliminary injunction restraining defendants from manufacturing and selling emblems bearing the identifying marks of the member clubs of the National Football League without appropriate disclaimer on the face of each emblem indicating that the emblem is not sponsored by or originating from plaintiff or a member club of the National Football League. Plaintiff, National Football League Properties, Inc., appeals from the issuance of this order, arguing that it is erroneous and contrary to law to the extent that it did not provide *complete* and *total* temporary injunctive relief pendente lite. Plaintiff requests this court to so modify the order as to completely enjoin defendants from manufacturing and selling their emblems pendente lite. Defendants have not filed a cross-appeal; however, in their briefs they contend that no injunctive relief was warranted in this case. On the failure of appellee to take or prosecute a cross-appeal, we are confined to issues raised by appellant and will not consider errors urged by appellee where they are not related to the issues raised by appellant. *Clodfelter v. Van Fossan*, 394 Ill. 29, 67 N.E.2d 182.

This suit brought by plaintiff against defendants is almost identical to a prior suit brought by plaintiff against Consumer Enterprises, Inc., *National Football League Properties, Inc. v. Consumer Enterprises, Inc.*, 26 Ill.App.3d 814, 327 N.E.2d 242, which we have also decided this day. Our opinion in *Consumer* is dispositive of the issues in this case. In its complaint seeking permanent injunctive relief, plaintiff, here as in *Consumer*, alleged six causes of action: (1) trademark infringement[1] and unfair competition; (2) deceptive trade practices;[2] (3) injury to business reputation and dilution of trademark;[3] (4) misappropriation of a property right; (5) misappropriation of the right to publicity; and (6) injury to business relationships. In their answer defendants denied the material allegations and raised, by way of affirmative defense, seven defenses.

---

[1] Ill. Rev. Stat. 1971, ch. 140, par. 19.
[2] Ill. Rev. Stat. 1971, ch. 121½, par. 312.
[3] Ill. Rev. Stat. 1971, ch. 140, par. 22.

Plaintiff is a California corporation owned in equal part by all 26 teams of the National Football League. Its main business is licensing the trademarks of the teams. Each member club of the National Football League has a symbol or logo which consists of a name, design and color. Plaintiff has been authorized by each member club to act as its exclusive licensing agent for its logo. Plaintiff in turn licenses various manufacturers to affix the team marks on merchandise to be sold to the public. Lion Brothers, Inc. has been granted the exclusive license to manufacture embroidered emblems depicting the teams' logos. These emblems are affixed to merchandise of other licensees to indicate sponsorship and authorization by the respective National Football member teams.

Defendant Dallas Cap and Emblem Manufacturing, Inc. (hereinafter Dallas), is a Texas corporation which, just as Consumer Enterprises, Inc., manufactures and sells embroidered cloth emblems which are duplications of the marks of the National Football League teams. Defendant Rainbow Emblem Co., a subsidiary of Dallas, is engaged in the business of selling to retailers emblems manufactured by Dallas. Defendant Vim Sports, Inc., is a retail store in Chicago, Illinois, which purchased emblems from Dallas. Each of Dallas' emblems is packaged separately in a blister package, the upper portion of which is red, white and blue and displays the words "Sport Patches." The upper portion of the Rainbow blister package consists of a rainbow effect and the only words appearing on this package are "Iron On" and "Ironing Instructions on Reverse."

Plaintiff's complaint alleged, *inter alia*, that in addition to selling to the public at retail level, Dallas also sells its patches to manufacturers of other articles with the intention or knowledge that its patches will be affixed to these articles prior to sale to the public; that on June 7, 1971, plaintiff made demand on Dallas to cease and desist the manufacture and sale of its emblems; that on June 16, 1971, Dallas denied that it was manufacturing or selling patches; that in July and August, 1972, Dallas represented that it would not manufacture or sell National Football League emblems; and that in 1972 Dallas sought and was refused a license from plaintiff to use the National Football League teams' marks on embroidered emblems.

At the hearing on plaintiff's motion for a preliminary injunction, the president of National Football League Properties, Inc., J. Robert Carey, testified that the 26 teams of the National Football League have assigned to plaintiff the responsibility of licensing, controlling and protecting the commercial use of the teams' marks. Merchandise licensees are not required to purchase emblems which they affix to their articles from Lion Brothers, but emblems manufactured by other companies must first be submitted to plaintiff and quality-approved prior to use by the licensee.

Plaintiff is engaged in a constant quality-control program whereby the quality of the merchandise, as well as the emblem to be affixed, is inspected. After observing samples of emblems manufactured by Dallas, Carey stated that Dallas' emblems do not meet the qualifications required by plaintiff. Carey testified that plaintiff does not grant any emblem manufacturer a license for retail sale of the team emblems because these emblems could be affixed to shoddy merchandise which would tarnish the image of the National Football League and its teams.

On cross-examination Carey admitted that some National Football League teams purchase merchandise not manufactured by licensees of plaintiff and sell or give away this merchandise, and that this merchandise is not quality inspected by plaintiff. Carey also admitted that he recently became aware that during the years 1971 and 1972 the National Football Hall of Fame had purchased approximately 60,000 emblems from Lion Brothers and had been engaged in the practice of selling these emblems as souvenirs to visitors. Carey stated that the Hall of Fame had agreed to cease the sale of these emblems. He also acknowledged that Purex Corporation, as a test client, had purchased 1300 vinyl decal emblems which it enclosed in boxes of its soap, but that these decals were not suitable for affixation to clothing or other articles. On redirect examination Carey identified the specification sheet used for the manufacture of the emblems by Lion Brothers, and stated that plaintiff has final approval of the specifications.

Hans Ziesel, professor of law and sociology at the University of Chicago, testified that he was asked to conduct a survey to explore consumer associations of emblems with the National Football League teams. The New York firm of Audits and Surveys conducted the field interrogation, and Ziesel prepared the questionnaire and the summary of the report. Very briefly, the report indicated that a random sample of 721 interviewees were shown emblems of either Dallas or Consumer Enterprises, Inc., and emblems manufactured by Lion Brothers. 78% of the respondents identified the emblems with football teams; of this 78%, 69% believed all or some of the emblems were official, 58% believed the emblems were authorized by the teams and 60% believed clothing to which the emblems were affixed was authorized.[4] On cross-examination, Ziesel stated that if a very clear and legible disclaimer was attached to the emblem, the responses of the interviewees would be different.

---

[4] The record indicates that after the hearing in this case the final, complete report of the survey was submitted to defendants and entered into the record. The survey was based upon a sample of 1005 interviewees, and the responses were broken down in terms of persons shown Consumer patches and those shown Dallas patches. The results, however, did not significantly differ.

Max Rosenbloom, president of Dallas, testified that on the back of each emblem manufactured by Dallas, a sticker "Not authorized by the NFL or its members" is attached, and that on November 14, 1973, Dallas commenced placing similar stickers on the front of each emblem. The stickers were placed inside the blister packages if they had not already been sealed, and on the outside of the packages if they had been sealed. Dallas also notified its independent sales representatives that as of November 14 they should visit the retailers and attach the stickers to the packages which were being sold. Rosenbloom admitted that the term "NFL" is most prominent on the disclaimer. He also stated that his instructions to Dallas employees are that the emblems are not to be sold outside of the blister packages, are not to be sold in bulk, and are to be sold only for resale to the public. Rosenbloom admitted that Dallas sells directly from its factory if a person walks in and requests a purchase. A document was introduced into evidence indicating that Dallas sold 550 emblems to one purchaser who walked into the factory. Finally Rosenbloom testified that Dallas had requested a license from plaintiff to permit the manufacture and sale of its emblems, but was told by plaintiff's agents that there was no chance of Dallas ever obtaining a license.

Anita Krueger, president of Vim Sports, Inc., testified that Vim purchased 42 emblems from Dallas and that 22 had been retailed in the Chicago area. She was not advised by representatives of Dallas of any disclaimer to be placed on the packages and knew nothing of the disclaimer. The remaining emblems were removed from the shelves on November 23, 1973, when the instant complaint was received.

The issue of the relief to which plaintiff is entitled has been determined by us in our opinion in *NFLP v. Consumer Enterprises, Inc.* For the reasons set forth in that opinion, we have concluded that plaintiff has shown a property right in its trademarks to be protected, and a probability of success as to its claims of trademark infringement,[5] unfair competition and deceptive practices.[6] We also reject defendant's claim raised here, which was also raised and rejected in *Consumer*, that the copying and sale of another's trademark is permitted under the *Sears* and *Compco* doctrine. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225; *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234.

■ ■ It is our opinion in this case, as it is in *Consumer*, that plaintiff is entitled to complete preliminary injunctive relief, and it is therefore unnecessary for us to consider plaintiff's other causes of action. Accordingly, the order of the trial court granting preliminary injunctive

---

[5] Ill. Rev. Stat. 1971, ch. 140, par. 19.
[6] Ill. Rev. Stat. 1971, ch. 121½, par. 312.

relief is modified insofar as the order provided that defendant may continue to manufacture and sell its emblems with a disclaimer. We are of the opinion that the preliminary injunction order providing complete injunctive relief which we affirmed in *Consumer* is appropriate in this case.

Affirmed as modified.

LEIGHTON and HAYES, JJ., concur.