HYATT CORPORATION, Plaintiff,

v.

HYATT LEGAL SERVICES, a
partnership, and Joel Hyatt,
Defendants.

No. 82 C 6178.

United States District Court,
N.D. Illinois, E.D.

Jan. 3, 1985.

James A. Klenk, Reuben & Proctor, Chicago, Ill., for plaintiff.

Max E. Wildman, Wildman, Harrold, Alan and Dixon, Chicago, Ill., J. Greenfield, Paul, Weiss, Rifkind, Warden & Garrison, New York City, for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

On April 5, 1983, this court denied plaintiff's motion for a preliminary injunction. The Seventh Circuit reversed, finding that defendant's use of the name Hyatt was a probable violation of the Illinois Anti-Dilution Act, Ill.Rev.Stat. ch. 140, § 22 (1981). *See Hyatt Corp. v. Hyatt Legal Services,* 736 F.2d 1153 (7th Cir.), *cert. denied* —— U.S. ——, 105 S.Ct. 434, 83 L.Ed.2d 361 (1984). The circuit court remanded the action to this court "for entry of an injunction prohibiting the appellee from using the name Hyatt Legal Services. The appellee

is to select promptly a new name ..." The circuit court also ordered "further proceedings consistent with this opinion." *Id.* at 1160. Two issues remain to be decided before entering the injunction ordered by the Court of Appeals. First, what name would be appropriate for use by defendant. Second, whether the Constitution limits the permissible scope of the injunction premised on Illinois law.

### Name

▮ In its opinion, the Court of Appeals suggested that defendant select a new name for itself. 736 F.2d at 1160. Defendant seeks to use only a disclaimer. A disclaimer would aid in reducing consumer confusion, but confusion is not the issue here. The Seventh Circuit found dilution. Dilution occurs with repeated use of the same distinctive name. A name change must occur to maintain the distinctiveness of plaintiff's mark.

▮ Defendant has proposed, as a possible new name, J. Hyatt Legal Services. Plaintiff has accepted that change with certain safeguards. First, that the word Hyatt never be used without the J. preceding it. Second, that the words J. Hyatt be the same size and type face as Legal Services on all promotional material. Third, that a disclaimer be used.

A disclaimer is not required. The Seventh Circuit specifically stated a disclaimer would probably not be required. 736 F.2d at 1160. As previously stated, a disclaimer would not protect the distinctiveness of plaintiff's mark. · This court, however, requires all promotional material and letterheads to use J. Hyatt instead of Hyatt alone. This requirement does not extend to normal correspondence or business conversation. Finally, the court requires that the letter J. be the same size, type, and color as the Hyatt in all signs and promotional materials. The court finds no reason to require the words J. Hyatt to be the same size and type as Legal Services. The court finds that the new name, with the safeguards stated, appropriately effectu-

ates the goals of Illinois' anti-dilution statute.

### Scope

▮ In its order remanding the action to this court, the Seventh Circuit suggests a nationwide preliminary injunction. The court stated that one reason for dilution of plaintiff's mark was the "nationwide scope of Hyatt Legal Services' business." 736 F.2d at 1159. The court also, in allowing defendant to choose a new name for itself, indicated a concern for ethical rules controlling the names of law firms in the states where defendant operates. *Id.* at n. 5. Defendant argues, however, that applying an Illinois law beyond its borders is unconstitutional. Defendant cites *New York Life Insurance Co. v. Head,* 234 U.S. 149, 34 S.Ct. 879, 58 L.Ed. 1259 (1914), and apparently raises due process arguments against a nationwide injunction, an issue not specifically discussed by the Court of Appeals.

The Illinois anti-dilution statute provides for injunctive relief if there exists a likelihood of injury through dilution. *See* Ill. Rev.Stat. 140 § 22. The statute does not specify the scope of the injunction, but courts have extended its protections well beyond Illinois' borders. *See Instrumentalist Co. v. Marine Corps League,* 509 F.Supp. 323, 340 (N.D.Ill.1981) (nationwide injunction), *aff'd on other grounds,* 694 F.2d 145 (7th Cir.1982); *National Football League Properties, Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 26 Ill.App.3d 820, 327 N.E.2d 247 (1st Dist.1975) (enjoining Texas manufacturer from producing certain products). *See also Polaroid Corp. v. Polaraid, Inc.,* 319 F.2d 830 (7th Cir.1963) (granting multistate injunction under Illinois' unfair competition and anti-dilution laws). The desire to extend nationwide an injunction based upon an Illinois law is understandable. As Judge Shadur, in *Instrumentalist, supra,* stated:

[Plaintiff] has asserted a protectable Illinois property right and now seeks to enjoin conduct in Illinois and elsewhere affecting its value. It would be the

height of absurdity to hold that Illinois had a legitimate interest in protecting vested rights (especially those of Illinois residents) against dilution but that, having acquired jurisdiction over an offender, courts sitting in Illinois would be helpless to deal with dilutive acts once they crossed state lines.

509 F.Supp. at 340.[1] This court, as Judge Shadur stated, certainly has the power to issue such an injunction by virtue of its jurisdiction over the parties. 509 F.Supp. at 340. However, when an interpretation of a law conflicts with the constitution, the "very essence of judicial duty" requires a court to apply the superior law to the case. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803). In the present case, the court believes there to be a conflict between an interpretation of the anti-dilution law which allows for a nationwide injunction and the commerce clause of the United States Constitution.

Since the court decided *Cooley v. Board of Wardens,* 53 U.S. (12 How) 299, 13 L.Ed. 996 (1851), it has been well recognized that the commerce clause, U.S. Const. Art. 1, § 8, Cl. 3, places implicit limitations on the powers of states to regulate interstate commerce even in the absence of explicit congressional legislation in the area.[2] Traditionally, cases applying the negative or dormant commerce clause, as the implied limitations are referred to, involved discriminatory treatment of interstate commerce by a state. *See e.g., City of Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). No such discriminatory treatment is involved in the present case. A nationwide injunction, however, seems to violate two other principles of commerce clause jurisprudence: (1) that states cannot directly regulate interstate commerce; and (2)

that incidental regulations of interstate commerce cannot be excessive in light of local interests furthered by the law. *See Edgar v. MITE Corp.,* 457 U.S. 624, 640, 102 S.Ct. 2629, 2639, 73 L.Ed.2d 269 (1982).

In *Shafer v. Farmers Grain Co.,* 268 U.S. 189, 45 S.Ct. 481, 69 L.Ed. 909 (1925), the Court held that "a state statute which by its necessary operation directly interferes with or burdens [interstate] commerce is a prohibited regulation and invalid, regardless of the purpose with which it was enacted." *Id.* at 199, 45 S.Ct. at 485. Where a state law has inevitably and directly interfered with "the natural functioning of the interstate market, either through prohibition or through burdensome regulation," the law has been held to violate the commerce clause. *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 806, 96 S.Ct. 2488, 2496, 49 L.Ed.2d 220 (1976). The commerce clause has also prohibited the application of a state statute to commerce that occurs wholly outside the state's borders, whether or not the commerce has effects within the state. *See Edgar v. MITE Corp.,* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (plurality opinion of White, J.).

■ If the mandated injunction is spread nationwide, it may directly affect interstate commerce. Advertising is an inevitable and often vital aspect of interstate commerce. *See generally Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The regulation of advertising within a state, such as occurred in *Hunt,* can impinge on interstate commerce and violate the commerce clause. A direct state injunction reaching advertising disseminated out of the state and intended for consumers out of the state would appear to be a direct interference with interstate commerce.[3] If that be so, the imposition of

1. Judge Shadur also relied on *Polaroid Corp. v. Polaraid, Inc., supra.*

2. At least one comentator has noted that these implied limitations have no process based reasons for existence in light of our modern day regulatory and legislative system. *See* Eule,

Laying the Dormant Commerce Clause to Rest, 91 Yale Law Journal 425 (1982).

3. An injunction issued pursuant to this statute need not be limited to advertising. In *National Football League Properties, Inc. v. Dallas Cap &*

such an injunction pursuant to state law would constitute precisely the direct state interference with interstate commerce that is forbidden by the commerce clause.

Even if a nationwide injunction is not a direct interference and the effect of the injunction is considered incidental, instead of direct, the result is the same. In *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), the court stated:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the punitive local benefits. *Huron Cement Co. v. Detroit,* 362 U.S. 440, 443 [80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960)]. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*See also Edgar v. MITE Corp.,* 457 U.S. at 643, 102 S.Ct. at 2641; *Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 36–37, 100 S.Ct. 2009, 2015–2016, 64 L.Ed.2d 702 (1980); *Hughes v. Oklahoma,* 441 U.S. 322, 331, 99 S.Ct. 1727, 1733, 60 L.Ed.2d 250 (1979). The balancing discussed by the court in *Pike* involves a number of factors. Most important is the actual effect on interstate commerce. The legitimacy of the local concern, however, is also an important factor. *See Lewis v. BT Investment Managers, Inc.,* 447 U.S. at 36, 100 S.Ct. at 2015. Statutes designed to protect health and welfare are more favored than statutes designed to protect employment and profits. *See id.* ; L. Tribe, *American Consti-*

*tutional Law,* 340 (1978). Statutes protecting purely local interests are more favored than those involving national interests. *See* L. Tribe, *supra,* at 340–41. *Compare Edgar v. MITE Corp., supra* (local interest of protection of local shareholders not sufficient to outweigh interference with national tender offer), *with Cities Service Gas Co. v. Peerless Oil and Gas Co.,* 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190 (1950) (allowing regulation of gas destined for interstate commerce where local interest involved conservation of scarce local resources). Finally, the statutory method used to promote the local interest should be the least restrictive on interstate commerce necessary to achieve the desired result. *See Pike, supra,* 397 U.S. at 142, 90 S.Ct. at 847; L. Tribe, *supra,* at 341–42.

The local interest in the present case is the protection of a corporation's trademark within Illinois. Unlike actions under the Lanham Act, where likelihood of confusion must be found and "what is infringed is the right of the public to be free of confusion," *see James Burrough, Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 274 (7th Cir. 1976), the anti-dilution statute is not concerned with the welfare of the consuming public but of the strength of a company's mark.[4] The protection of a mark's strength is certainly a legitimate local interest. That interest, however, by not encompassing protection of consumers is economic in nature, designed to create a more hospitable economic environment for producers and distributors and to protect corporate advertising dollars. Nor is it solely local. The protection of trademarks is the subject of both federal statutes and of legislation in various states, where the policy decisions respecting scope of protection have differed.

Emblem Mfg., Inc., 26 Ill.App.3d 820, 327 N.E.2d 247 (1st Dist.1975), a state court enjoined a Dallas corporation from producing a certain item sold in interstate commerce. A clearer example of a direct regulation of interstate commerce is difficult to imagine.

4. In fact, if likelihood of confusion is found, an action under the anti-dilution statute is not warranted. *See Edgewater Beach Apartments Corp. v. Edgewater Beach Management Co., Inc.,* 12 Ill.App.3d 526, 534, 299 N.E.2d 548, 554 (1st Dist.1973) (dilution remedy only available when no other remedies exist).

In relation to the local interest sought to be protected, the remedy sought by plaintiff appears excessive. A nationwide injunction surely would protect the local interest. As the Seventh Circuit stated, plaintiff is damaged in Illinois by the nationwide scope of defendant's business. The nationwide injunction proposed by plaintiff would eliminate any dilution problem. The injunction sought by plaintiff, however, would also reach way beyond the limits of Illinois, affecting advertising and promotion in areas which have little, if any, effect on the strength of plaintiff's trademark within Illinois. The thought of an Illinois statute, in the absence of fraud, affecting the advertising of an Ohio legal office to Ohio citizens in Ohio, where no anti-dilution statute exists, is particularly disquieting. A more restricted injunction would also incidentally affect interstate commerce, but the effect would be much smaller than that proposed by plaintiff, and be more in proportion to the local interest sought to be protected. The latter could be considered the least restrictive alternative facing this court.

In *Edgar v. MITE Corp.*, the court discussed the constitutionality under the commerce clause of two sets of state statutes analogous to the different remedies sought here. The first law discussed, the state's blue sky laws, affect the distribution of nationwide stock offerings within a state. If these laws are not satisfied, the security being offered could not be issued in the state, though its issuance in another state was not affected. These laws are somewhat analogous to the restricted injunction proposed by the defendants and have been upheld as constitutional. *See id.*, 457 U.S. at 641, 102 S.Ct. at 2640. The other statute discussed was an Illinois law that prohibited in their entirety certain tender offers if specific state requirements were not fulfilled. This law is analogous to the injunction sought by plaintiff. Because it required invalidation of a nationwide tender offer when certain state requirements were not satisfied, the court found that the latter law was an excessive burden on interstate commerce in light of the local interests protected and was, therefore, unconstitutional. *Id.* at 641–46, 102 S.Ct. at 2640–42.

The court believes that a nationwide injunction as sought by plaintiff, even if considered as only incidentally affecting interstate commerce, would place an excessive burden on that commerce in light of the interest sought to be protected. The injunction that will issue, therefore, should constitutionally remain within the borders of Illinois.

Other considerations counsel that conclusion. The rights accorded plaintiff by Illinois are not of a nature commonly recognized elsewhere. Whether or not to extend protection in the absence of any likelihood of confusion is customarily a legislative policy decision. Though a number of states have anti-dilution statutes, *see* J. Gilson, 1 Trademark Protection and Practice, § 5.05[9], at 5–40 (1984), a majority do not. Imposing Illinois' anti-dilution law upon those states that have chosen not to pass such a law, in some cases possibly an explicit choice, or upon those who have interpreted their statute differently, seems anathema to our federal system. "In fact, considerations of comity among the states favor limited out-of-state application of exclusive rights acquired under domestic law, and a district court does not err when it takes a restrained approach to the extraterritorial application of such rights." *Blue Ribbon Feed Co., Inc. v. Farmers Union Central Exchange, Inc.*, 731 F.2d 415, 422 (7th Cir.1984) (upholding district court's refusal to extend Wisconsin trademark protections beyond its borders, even though noting *Polaroid, supra*, and *Instrumentalist, supra* ).

### Injunction

Having found the strong possibility of a constitutional infirmity in a nationwide injunction, the court finds itself in a peculiar position. The Seventh Circuit has indicated that a nationwide injunction is warranted. Case law dealing with the same statute has granted such relief. The Seventh Circuit and the Supreme Court have been present-

ed with defendants' constitutional arguments, though in a different form than that relied upon by this court, and have chosen not to deal with the issue. These factors compel this court to issue the following relief.

(1) Pursuant to the higher court's opinion and the previously noted precedent, the court issues a nationwide injunction requiring defendant, in all its advertisements, promotional materials, and letterheads, to use the name J. Hyatt Legal Services instead of Hyatt Legal Services. In these materials, the word Hyatt is not to be used without the initial J. The J. must be the same size, the same type, and the same color as the name Hyatt in all the advertisements. No disclaimer is required.

(2) Pursuant to this court's constitutional analysis, the court stays the injunction as to all advertisements not expected, in the normal course, to be received within the State of Illinois. This stay will terminate on February 4, 1985, unless defendant has by that date filed a notice of appeal. In that event, the stay will continue until further order of the court.