## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **GUARDSMARK, INC.,** | ) | |
| | ) | |
| Plaintiff/Appellee | ) | Shelby Chancery No. 104166-1 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BORG-WARNER PROTECTIVE SERVICES,** | ) | Appeal No. 02A01-9409-CH-00207 |
| **d/b/a BURNS INTERNATIONAL SECURITY** | ) | |
| **SERVICES,** | ) | |
| | ) | |
| Defendants/Appellants. | ) | |

**FILED**

**November 4, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE C. NEAL SMALL, CHANCELLOR

For the Plaintiff/Appellee:

David Wade
Memphis, Tennessee

Gerald Stern
Washington, D.C.

David O. Bickart
Jonathan D. Schiller
Washington, D.C.

For the Defendant/Appellant:

Thomas L. Henderson
Thomas H. Lawrence
Memphis, Tennessee

**AFFIRMED IN PART, REVERSED IN PART
AND REMANDED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This case involves restrictive employment covenants. The plaintiff and the defendant are both private security companies. The trial court granted the plaintiff a restraining order enjoining the defendant from inducing former employees to breach the restrictive covenants in other states, from misrepresenting facts concerning the enforceability of the covenants, or from litigating or assisting others in litigating in other states regarding the enforceability of the restrictive covenants. We affirm in part, reverse in part, and remand.

Plaintiff/Appellee Guardsmark ("Guardsmark") and Defendant/Appellant Borg-Warner ("Borg-Warner") are competitors in the private security industry. Guardsmark requires its security guards to sign a restrictive covenant which prevents them from working for another security firm at the same work site for a period of one year after leaving Guardsmark. The covenant reads:

> Employee hereby agrees that following the termination of employment with GUARDSMARK, whether voluntary or involuntary, for a period of one year thereafter he (she) will not perform or hire others to perform any security services at the site, place or location where he (she) performed security services within the immediate preceding twelve (12) months of his (her) employment with GUARDSMARK.

The guards may request a transfer to another Guardsmark site, or may work for another company at another site without violating the covenant. The guard's employment contract also provides that: "Each party hereby consents to the jurisdiction and venue of the U.S. District Court for the Western District of Tennessee and any court of the State of Tennessee in any action, suit, or proceeding arising out of or relating to this Agreement or the employment of Employee hereunder . . . ." Of course, Borg-Warner is not a party to this agreement; the contract is between Guardsmark and the individual security guard.

On May 5, 1994, Guardsmark filed a lawsuit against Borg-Warner in Chancery Court in Shelby County, alleging that Borg-Warner tortiously interfered with Guardsmark's contractual relations in Seattle, Washington. Guardsmark asserted that, after Borg-Warner took over the security services contract at UPS facilities in Seattle, Borg-Warner actively solicited the Guardsmark security officers on the site to continue working at the site as Borg-Warner employees, in breach of the restrictive covenant between Guardsmark and its employees. Guardsmark argued that Borg-Warner misrepresented to Guardsmark employees that the restrictive covenants were unenforceable.

The day the complaint was filed, the Shelby County trial judge, Chancellor Neal Small, issued a restraining order prohibiting Borg-Warner from "interfering with or attempting to cause the

breach of the restrictive covenants contained in the employment agreements between Guardsmark and its security officers servicing the Seattle, Washington area facilities of UPS and the agreement between Guardsmark and United Parcel Service." On May 20, 1994, the parties entered an identical Consent Order of Temporary Injunction.

On July 28, 1994, Guardsmark filed a Supplemental Verified Complaint in Shelby County Chancery Court, seeking declaratory and injunctive relief based on Borg-Warner's activities in Birmingham, Alabama. Guardsmark alleged that Borg-Warner's conduct in Birmingham was similar to that in Seattle, and also alleged that Borg-Warner represented to Guardsmark clients that Guardsmark could not enforce its restrictive covenants. A supporting affidavit filed by Guardsmark stated that a representative of Borg-Warner showed a Guardsmark supervisor a "legal paper" and told him that Borg-Warner "had beaten Guardsmark in Tucson, Arizona and that the opinion of Judge Tinney which was attached discussed that."[1] The affidavit stated that the Borg-Warner representative "never said anything to me about whether Guardsmark had been successful in other cases in enforcing its restrictive covenants with its employees." Guardsmark asserted that Borg-Warner had "established a pattern" of "causing Guardsmark security officers to breach their restrictive covenants" and that Borg-Warner had "forced Guardsmark to engage in litigation throughout the United States to enforce and defend its restrictive covenants."

Once again, the Shelby County Chancellor entered a temporary restraining order the day the supplemental complaint was filed regarding Borg-Warner's activities in Birmingham, Alabama. As with the earlier restraining order, Borg-Warner was enjoined from attempting to cause the breach of Guardsmark's restrictive covenants. However, this restraining order also enjoined Borg-Warner from:

> misrepresenting to anyone, including former, present or prospective Guardsmark clients and employees that Guardsmark cannot or will not enforce its restrictive covenants and to require [Borg-Warner], if it chooses to discuss Guardsmark's employment restrictive covenants, to present to those with whom it discusses such matters copies of all orders signed by Courts throughout the United States which have upheld the enforceability of Guardsmark's restrictive covenants.

---

[1] The record in this case includes court decisions in Arizona and Oklahoma in which Guardsmark's restrictive covenant was not enforced under the facts presented in those cases.

Shortly thereafter, on August 10, 1994, Borg-Warner and one of Guardsmark's former employees filed a lawsuit in Birmingham, Alabama, citing difficulties caused by the Tennessee restraining order and challenging the validity of the restrictive covenant. Immediately upon receiving the Alabama complaint, Guardsmark sought injunctive relief from Chancellor Small in Tennessee. On August 12, 1994, the Shelby County trial court issued an order extending the effective date of the Temporary Restraining Order and prohibiting Borg-Warner from "taking any action to prosecute the case filed in Birmingham, Alabama on August 10, 1994." On August 29, 1994, Guardsmark filed an application for injunctive relief from interference with Guardsmark's restrictive covenants "with its past, present or future employees," from any misrepresentations regarding the restrictive covenants, from litigating to challenge the enforceability of the restrictive covenants, and specifically from proceeding with the Alabama litigation. Guardsmark alleged that Borg-Warner was engaged in wide-ranging efforts to defeat Guardsmark's restrictive covenants. Chancellor Small entered a temporary restraining order as requested by Guardsmark the same day.

On September 9, 1994, the Shelby County trial court issued an order finding Guardsmark's restrictive covenants enforceable under the laws of Tennessee and Alabama. The September 9 order granted Guardsmark's motion for a Temporary Injunction prohibiting Borg-Warner from "interfering with or attempting to cause the breach of the restrictive covenants contained in the employment agreement between Guardsmark and its employees" in Alabama. The injunction also prohibited Borg-Warner from misrepresenting facts concerning the enforceability of Guardsmark's restrictive covenants to former, present or prospective Guardsmark clients and employees. Borg-Warner was specifically prohibited from providing to any persons "copies of any judicial orders or opinions concerning the Guardsmark restrictive covenants unless it provides all such orders, including those which have upheld the enforceability of Guardsmark's restrictive covenants." The order again prohibited Borg-Warner from taking part in the Alabama litigation.

This provoked yet another lawsuit in another forum. On September 22, 1994, Borg-Warner filed suit against Guardsmark, the trial judge in this case, Shelby County Chancellor Neal Small, and the Shelby County Chancery Court in the United States District Court for the Eastern District of Kentucky, alleging that the Tennessee injunction violated Borg-Warner's First Amendment right of free speech, right to petition the government, the full faith and credit clause and 28 U.S.C. § 1738, and the Supremacy clause of the United States Constitution. Chancellor Small modified the

3

Tennessee injunction to permit Borg-Warner to prosecute the Kentucky lawsuit. The Kentucky district court determined that it lacked personal jurisdiction over Chancellor Small and the Chancery Court, but granted summary judgment to Guardsmark on the remaining claims. *See Borg-Warner Protective Servs. Corp. v. Guardsmark, Inc.*, 946 F. Supp. 495 (E.D. Ky. 1996).[2]

On December 20, 1995, Guardsmark filed a motion for summary judgment in this case. Chancellor Small granted Guardsmark's motion in an order filed January 26, 1996. The Order states in part:

> THIS COURT THEREFORE DECLARES THAT, after reviewing the law of Tennessee, Alabama, Washington and Kentucky, Guardsmark's covenants are valid and enforceable under the laws of Tennessee, Alabama, Washington and Kentucky. The Guardsmark covenants state they are to be construed under Tennessee law, and, as has been said, are valid under Tennessee law.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:
>
> 1. Defendant Borg-Warner is hereby permanently enjoined from interfering with or attempting to cause the breach of the restrictive covenants contained in the employment agreements between Guardsmark and its employees; and
>
> 2. Defendant Borg-Warner is hereby permanently enjoined from initiating and encouraging or assisting others to initiate litigation to challenge the enforceability of Guardsmark's restrictive covenants with its employees.

The trial court's final and permanent order does not state explicitly whether Borg-Warner is permanently enjoined from misrepresenting facts concerning the enforceability of Guardsmark's restrictive covenants. In the final order, the trial court states, "This court hereby makes permanent its orders of temporary injunction with respect to the foregoing points which were previously entered in this case." Since the final order is unclear on this point, for purposes of this appeal, we will assume that the trial court's final order permanently enjoined Borg-Warner from misrepresenting facts, either expressly or by implication, concerning Guardsmark's restrictive covenants, and prohibited Borg-Warner from providing any person copies of judicial orders from other states finding the restrictive covenants unenforceable unless it also provided copies of orders upholding the enforceability of the covenants. Borg-Warner now appeals the trial court's final order.

---

[2] The Sixth Circuit Court of Appeals affirmed the Kentucky federal district court in an opinion dated June 16, 1998.

4

On appeal, Borg-Warner raises twelve issues:

1.  Should this Court reverse the decision of the Chancery Court based on *res judicata* because the issues litigated in this case have already been litigated to final judgment in another action between Borg-Warner and Guardsmark?

2.  Did the Chancery Court err in failing to dismiss this action for lack of personal jurisdiction over Borg-Warner since the events on which this suit is based occurred outside of Tennessee, and Borg-Warner's contacts to Tennessee are irrelevant to this action?

3.  Did the Chancery Court err in failing to dismiss this action based on *forum non conveniens* since this suit arose out-of-state, since the contracts on which the suit is based were signed out-of-state, since all the witnesses are out-of-state, and since this action could have been conveniently joined to a prior federal action in Kentucky?

4.  Does the Chancery Court injunction violate the Full Faith and Credit Clause by prohibiting Borg-Warner's actions in other states, even though other states have found Guardsmark's covenants unenforceable?

5.  Does the Chancery Court injunction violate the First Amendment and Tennessee law as a prior restraint on speech where it prohibits Borg-Warner from, among other things, interfering with the restrictive covenants of Guardsmark's future employees?

6.  Does the Chancery Court injunction violate the First Amendment and corresponding Tennessee constitutional free speech rights since the Chancery Court neither determined that there was a significant government interest, nor did it tailor the injunction to burden no more speech than was necessary?

7.  Is the Chancery Court injunction unconstitutionally vague and over broad since it prohibits Borg-Warner "from taking any action to interfere with Guardsmark's covenants . . . and from making any misrepresentations regarding Guardsmark?"

8.  Did the Chancery Court err by entering a nationwide injunction declaring all of Guardsmark's restrictive covenants valid regardless of other states' laws and decisions on this issue?

9.  Does the Chancery Court injunction violate the Commerce Clause since it has the effect of regulating conduct wholly outside of Tennessee?

10.  Did the Chancery Court err by allowing Guardsmark to litigate the validity of its restrictive covenants without joining the security guards who signed the covenants?

11.  Did the Chancery Court abuse its discretion by failing to grant Borg-Warner a continuance to obtain controverting affidavits when Guardsmark filed a late affidavit in support of summary judgment, or by failing to grant Borg-Warner's motion to strike the late affidavit?

12.  Did the Chancery Court err in granting Guardsmark's motion for summary judgment when there were genuine issues of material fact precluding summary judgment?

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of

5

demonstrating that no genuine issue of material fact exists. *See Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* at 210-11. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See id.* Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See id.*

On appeal, Borg-Warner contends that the trial court erred in not dismissing the complaint for lack of personal jurisdiction. Borg-Warner asserts that, although it is licensed to do business in Tennessee, its contacts with this state are unrelated to this action and are therefore insufficient to support personal jurisdiction. Guardsmark argues that the exercise of personal jurisdiction over Borg-Warner is appropriate because Borg-Warner's contacts are sufficient and because Borg-Warner waived any objection to personal jurisdiction by failing to timely object.

Rule 12.08 of the Tennessee Rules of Civil Procedure provides:

> A party waives all defenses and objections which the party does not present either by motion as hereinabove provided, or, if the party has made no motion, in the party's answer or reply, or any amendments thereto, (provided, however, the defenses enumerated in 12.02(2) . . . shall not be raised by amendment) . . . .

Rule 12.02(2) of the Tennessee Rules of Civil Procedure is the defense of "lack of jurisdiction over the person." Under this rule, "objections to personal jurisdiction and venue are deemed waived unless they are raised in a timely manner." *Dixie Sav. Stores, Inc. v. Turner*, 767 S.W.2d 408, 410 (Tenn. App. 1988). If a party makes a "general appearance" without challenging personal jurisdiction, venue, or other matters, these objections are deemed waived. *See id.* In *Landers v. Jones*, 872 S.W.2d 674 (Tenn. 1994), the Court stated:

> Initially, we note that there is a modern legal trend away from the technical requirement that a defendant must enter a special appearance to contest personal jurisdiction. . . . Under both the state and federal civil procedure rules, therefore, a defendant is permitted to raise the defense of lack of personal jurisdiction at the same time other defenses are raised. Waiver occurs only if there is no objection to personal jurisdiction in the first filing, either a Rule 12 motion or a answer.

872 S.W.2d at 676. Tennessee courts have defined the term "general appearance," as "acts from which it can reasonably be inferred that the party recognizes and submits itself to the jurisdiction of

6

the court.  Thus a party's consent to the entry of a judgment against it constitutes a general appearance." ***Dixie Sav. Stores***, 767 S.W.2d at 410.  In ***Patterson v. Rockwell International***, 665 S.W.2d 96 (Tenn. 1984), the Tennessee Supreme Court discussed the finding of an appearance:

> [B]efore an appearance will be found by implication, it must be shown from the defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff other than one contesting only the jurisdiction of the court or by reason of some act or proceeding recognizing the case as being in court.

***Patterson***, 665 S.W.2d at 99-100.  The ***Landers*** court cautioned:

> In accordance with the modern trend, and Rule 12.02 of the Tennessee Rules of Civil Procedure juvenile courts should only find a general appearance that waives a defendant's right to contest personal jurisdiction when the defendant has recognized the proper pendency of the cause by making a motion that goes to the merits or by filing an answer, without challenging personal jurisdiction.  To the extent that prior judicial decisions can be read as requiring otherwise, they are overruled.

***Landers***, 872 S.W.2d at 677.  Given these parameters, the circumstances in this case must be examined.

Guardsmark filed its original complaint on May 5, 1994.  Before raising the issues of lack of personal jurisdiction and improper venue, Borg-Warner took the following actions:

1. Consent Order of Temporary Injunction, entered May 20, 1994, and signed by counsel for Borg-Warner.
2. Notice of Appearance of counsel for Borg-Warner, filed May 23, 1994.
3. Defendant's Notice of Tennessee Rules of Civil Procedure 30.02(6) Deposition of the Person(s) Most Knowledgeable at Guardsmark, Inc., filed August 4, 1994, and signed by Borg-Warner's counsel.
4. Defendant's Objections and Response to Plaintiff's Request for Production of Documents, filed August 10, 1994, and signed by Borg-Warner's counsel.
5. Order Resetting Date of Preliminary Injunction and Extending Temporary Restraining Order, entered August 12, 1994, and signed by Borg-Warner's counsel.
6. Affidavit of Ray Sides, submitted on behalf of Borg-Warner and filed on August 26, 1994.
7. Affidavit of David B. Hicks, submitted on behalf of Borg-Warner and filed on August 26, 1994.
8. Affidavit of Charles Rodney Weldon, submitted on behalf of Borg-Warner and filed on August 26, 1994.
9. Supplemental Notice of Appearance of counsel for Borg-Warner, filed on September 7, 1994, and signed by new Borg-Warner counsel.
10. Defendant's Application for Permission to Appeal and Motion to Stay Restraining Order and Temporary Injunction Pending Appeal, filed on September 8, 1994, and signed by Borg-Warner counsel.
11. Application on Behalf of Defendant-Appellant for Extraordinary Appeal by Permission on Original Application in the Appellate Court and Motion to Stay, filed on September 9, 1994, and signed by Borg-Warner counsel.
12. Defendant's Motion for Reconsideration of Order Granting Restraining Order and Temporary Injunction or, in the Alternative, Motion to Dissolve and/or Modify Restraining Order and Temporary Injunction, filed

September 8, 1994, and signed by Borg-Warner's counsel.

13.     Order Granting Temporary Injunction, entered by the Chancellor on September 9, 1994, and signed by Borg-Warner's counsel.

The first time Borg-Warner raised the defense of lack of personal jurisdiction was in its Answer, and in a motion, both filed on September 14, 1994, over four months after Guardsmark filed its Complaint. Under these circumstances, we find that Borg-Warner waived any objection to the trial court's lack of jurisdiction over the person. The decision of the trial court is affirmed on this issue.

Borg-Warner also asserts on appeal that the trial court erred in denying its motion to dismiss on the grounds of *forum non conveniens*. Borg-Warner notes that the events that led to this lawsuit occurred outside Tennessee and that all the witnesses with knowledge of the covenants at issue reside in Alabama and Washington. Although the contracts between Guardsmark and the individual security guards are governed by the Tennessee forum selection clauses of their contracts, of course the contractual provision between Guardsmark and the security guards would not govern an action between Guardsmark and Borg-Warner. Under these circumstances, Borg-Warner argues that these other states have a more significant relationship to the controversy and a legitimate interest in this suit, and consequently that the trial court erred in denying Borg-Warner's motion to dismiss.

On appeal, this Court must determine whether the trial court's denial of Borg-Warner's motion to dismiss based on the doctrine of *forum non conveniens* was an abuse of discretion. *See Package Exp. Ctr., Inc. v. Snider Foods, Inc.*, 788 S.W.2d 561, 564 (Tenn. App. 1989) (citing *Zurick v. Inman*, 221 Tenn. 393, 404, 426 S.W.2d 767, 772 (1968)). There are numerous factors considered in determining the applicability of the doctrine of *forum non conveniens*. These factors "generally relate to the parties, witnesses, subject-matter, or the court." *Zurick*, 426 S.W.2d at 772. It is necessary that the cause of action arise outside the state in order to trigger the question of the applicability of the doctrine, but this fact in and of itself is not sufficient. *See id.* at 773. In addition, while the necessity of out-of-state witnesses may be considered,

> the fact [that] there are out-of-state witnesses is not of itself enough to support an application of the doctrine. This factor has to be supported by facts showing why, due to out-of-state witnesses, there is a strong likelihood defendant will be done an injustice if forced to go to trial in the forum selected by plaintiff. This can be done by giving the names of the witnesses, nature and materiality of their testimony, and any other applicable facts. It is upon these facts the trial court exercises its discretion in the application of the doctrine.

*Id.*, 221 Tenn. at 410, 426 S.W.2d at 775. Other factors that may be considered include:

> the relative ease of access to sources of proof; availability of compulsory process for

8

attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious and inexpensive.

*Package Exp.*, 788 S.W.2d at 563 (quoting *Zurick*, 221 Tenn. at 403, 426 S.W.2d at 772).

In this case, the cause of action arose out-of-state, and one of the parties, Borg-Warner, is located outside Tennessee but does business in Tennessee. In support of its motion to dismiss, Borg-Warner submitted affidavits from its employees, who assert that they have no contact with the state of Tennessee. However, the employees indicated that their jobs require them to travel from Ohio to Kentucky and other states. Under these circumstances, the evidence is insufficient to find that the trial court abused its discretion by denying Borg-Warner's motion to dismiss on the basis of *forum non conveniens*. The decision of the trial court is affirmed on this issue.

Borg-Warner also argues that the doctrine of *res judicata* requires dismissal of this lawsuit. Borg-Warner's argument is based on its litigation against Guardsmark in federal court in Kentucky.

On September 15, 1994, the Tennessee trial court in this case issued a temporary injunction against Borg-Warner, prohibiting Borg-Warner from interfering with Guardsmark's restrictive covenants and prohibiting Borg-Warner from litigating against Guardsmark in other forums. On September 21, 1994, Guardsmark filed a petition to hold Borg-Warner in contempt for violating this order and previous orders. Borg-Warner then filed a motion for modification of the temporary injunction in order to file suit in federal court against Guardsmark, asserting certain federal claims. The Tennessee trial court modified the injunction to allow Borg-Warner to file actions in the United States District Court for the Western District of Tennessee, and later also modified the injunction to allow Borg-Warner to file a complaint in the United States District Court for the Eastern District of Kentucky. On September 22, 1994, Borg-Warner filed a complaint in the Eastern District of Kentucky against Shelby County Chancellor Neal Small, the Shelby County Chancery Court, and Guardsmark. *See Borg-Warner Protective Servs. Corp. v. Guardsmark, Inc.*, 946 F. Supp. 495 (E.D. Ky. 1996). Borg-Warner asserted that Guardsmark's restrictive covenants were unenforceable and sought an injunction prohibiting the enforcement of the Shelby County Chancellor's orders. *See id.* at 497. After the Kentucky federal court determined that it lacked personal jurisdiction over the Tennessee trial judge and the Chancery Court, Borg-Warner voluntarily dismissed those claims. The Kentucky federal court heard the claims against Guardsmark on the merits, found that

Guardsmark's restrictive covenants were enforceable, and dismissed Borg-Warner's claims against Guardsmark. *See id.* at 502.[3]

It is unclear how application of the doctrine of *res judicata* is favorable to Borg-Warner under these circumstances, since the Kentucky federal court refused to enjoin enforcement of the Tennessee injunction at issue here, and dismissed Borg-Warner's claims against Guardsmark. Although the Kentucky federal court decision was rendered ten months after the trial court in this case granted summary judgment for Guardsmark, Borg-Warner contends that the doctrine of *res judicata* applies because the federal decision, though appealed, was final and the trial court's decision in this case was not final. Of course, since the Kentucky federal court's decision was rendered months after the decision in this Court, the issue of *res judicata* was not raised in the trial court. Under all of these circumstances, we find this argument to be without merit.

Borg-Warner also contends on appeal that the trial court erred in granting summary judgment to Guardsmark and in issuing the injunctive relief sought. Borg-Warner argues in part that the injunction is overly broad and violates the Commerce Clause of the United States Constitution.[4] Borg-Warner maintains that the trial court's order affects interstate commerce in security guard services outside Tennessee, and therefore has the effect of regulating interstate commerce wholly outside Tennessee.

The initial complaint in this case was based on Borg-Warner's actions in a given situation in Seattle, Washington. The supplemental complaint sought relief based on Borg-Warner's conduct at a particular facility in Birmingham, Alabama. Subsequently, Guardsmark sought broader relief, alleging, and submitting documents indicating, that Borg-Warner was engaged in wide-ranging efforts to challenge Guardsmark's restrictive covenants. Guardsmark sought an order enjoining

---

[3]     The decision of the Kentucky federal court was later affirmed on appeal. See footnote 2 herein.

[4]     The Commerce Clause of the United States Constitution grants Congress the power "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3.

Borg-Warner from:

> 1. Taking any action to interfere with Guardsmark's restrictive covenants with its past, present or future employees;

> 2. Making misrepresentations regarding Guardsmark and its restrictive covenants;

> 3. Initiating and encouraging or assisting others in litigation to challenge the enforceability of Guardsmark's restrictive covenants with its employees; and

> 4. From proceeding with or taking part in the litigation filed by Borg-Warner in Birmingham, Alabama, in the Circuit Court of Jefferson County, Alabama, at Civil Action No. CV-94-05690.

Guardsmark's request for injunctive relief was granted *in toto* the same day.

In support of its argument, Borg-Warner cites *Hyatt Corp. v. Hyatt Legal Services*, 610 F. Supp. 381 (N.D. Ill., E.D. 1985). In *Hyatt*, the plaintiff, Hyatt Corporation, sought a nationwide injunction prohibiting the defendant from using the trademarked name Hyatt for its service, Hyatt Legal Services. The trial court denied the plaintiff's motion for a preliminary injunction, and the Seventh Circuit Court of Appeals reversed, finding that use of the name Hyatt Legal Services was a probable violation of the Illinois Anti-Dilution Act, in that it diluted the distinctiveness of the plaintiff's mark. *See id.* at 381-82. The appellate court remanded the action to the trial court "for entry of an injunction prohibiting the appellee from using the name Hyatt Legal Services" and ordered the defendant to select a new name. *Id.*

On remand, the trial court examined a nationwide injunction in order to enforce Hyatt Corporation's protectable property right against dilution of its mark, under Illinois' anti-dilution statute. *See id.* at 382. The trial court noted first that the trial court had the power to issue a nationwide injunction, by virtue of its jurisdiction over the parties. *See id.* at 383. However, the *Hyatt* court found that the issuance of a nationwide injunction in that case would conflict with the Commerce Clause of the United States Constitution. *See id.* at 383-85. The court noted, under the Commerce Clause,

> (1) that states cannot directly regulate interstate commerce; and (2) that incidental regulations of interstate commerce cannot be excessive in light of local interests furthered by the law.

*Id.* at 383 (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 640, 102 S. Ct. 2629, 2639, 73 L. Ed. 2d 269 (1982)). Observing that advertising is a "vital aspect of interest commerce," the court found that a state injunction directed at advertising out of the state "would appear to be a direct interference with interstate commerce." *Id.* The court found that such a direct interference with interstate commerce

would conflict with the Commerce Clause. *See id.* at 384.

In the alternative, the *Hyatt* court examined whether the injunction would be an "incidental" regulation of interstate commerce that violated the Commerce Clause. Quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970), the *Hyatt* court stated:

> Where the [state] statute regulates evenhandedly to effectuate a legitimate local public interest and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the punitive local benefits. . . . If a legitimate local purpose is found then the question becomes one of degree. And the extend of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Id.* at 384 (quoting *Pike*, 397 U.S. at 142, 90 S. Ct. at 847). In *Hyatt*, the local interest was the protection of the corporation's trademark within the state. *See id.* Noting that trademark protection differs among states, the *Hyatt* court found that a nationwide injunction, while effective to protect the local interest, appeared "excessive." *Id.* at 385. The court stated:

> The nationwide injunction proposed by plaintiff would eliminate any dilution problem. The injunction sought by plaintiff, however, would also reach way beyond the limits of Illinois, affecting advertising and promotion in areas which have little, if any, effect on the strength of plaintiff's trademark within Illinois. The thought of an Illinois statute, in the absence of fraud, affecting the advertising of an Ohio legal office to Ohio citizens in Ohio, where no anti-dilution statute exists, is particularly disquieting.

*Id.* The *Hyatt* court concluded that a nationwide injunction, even if it only incidentally affected interstate commerce, "would place an excessive burden on that commerce in light of the interest sought to be protected." *Id.* Nevertheless, because the appellate court had directed the trial court to issue a nationwide injunction, the trial court did so. *See id.* at 385-86. However, the trial court stayed the injunction pending appeal. *See id.* at 386. The record shows no further published action on the case.

Guardsmark insists that the trial court in this case had the power to issue a nationwide injunction, and argues that Tennessee has a legitimate interest in protecting Guardsmark's contractual provisions in any state. Guardsmark cites *Carson v. Here's Johnny Portable Toilets, Inc.*, 810 F.2d 104 (6th Cir. 1987), in which the court upheld the issuance of a nationwide injunction to prevent the dilution of the plaintiff's state-created rights. Guardsmark argues that Borg-Warner may seek modification of the injunction for states whose laws differ from Tennessee regarding the enforcement of restrictive covenants, conceding that at least one state, California, has enacted statutes which would prevent the enforcement of Guardsmark's covenants.

12

Determining the geographic scope of an injunction is within the discretion of the trial court. *See Deere & Co. v. MTD Prod., Inc.*, 41 F.3d 39 (2d Cir. 1994). The trial court in this case, having jurisdiction over the parties, had the power and authority to issue an injunction crossing state lines. *See*, *e.g.*, *Instrumentalist Co. v. Marine Corps. League*, 509 F. Supp. 323, 340 (N.D. Ill. 1981), *aff'd*, 694 F.2d 145 (7th Cir. 1982); *Champions Golf Club, Inc. v. Sunrise Land Corp.*, 846 F. Supp. 742, 759 (W.D. Ark. 1994) (and cases collected therein); Restatement (Second) of Conflict of Laws § 53.

In this case, Guardsmark's interest is protection of its nationwide right to prohibit employees from providing security services at a given site after Guardsmark no longer provides security services at that site. The trial court found that Guardsmark's restrictive covenants were limited in scope and reasonable, and therefore enforceable under the laws of Tennessee and other states. However, the enforcement of any restrictive covenant depends greatly on the facts presented in a given situation. As between the parties in this case, the courts of at least two states, Arizona and Oklahoma, declined to enforce Guardsmark's restrictive covenant under certain circumstances. In both of those cases, the employee subject to the restrictive covenant was not offered another position by Guardsmark after Guardsmark's services at the site of employment were terminated. In the Oklahoma decision, the court stated:

> Viewed without regard to attendant circumstances, the Guardsmark covenant falls well within the realm of reasonableness. It is clearly limited in scope, and the prohibited "activity" is limited to protecting the employer from having its stock of employees at a facility "raided" by a competitor. However, viewing the restraint in light of all the circumstances surrounding Guardsmark's implementation of it here makes the covenant much less reasonable.

> Plaintiff's evidence showed that the loss of the Amoco contract -- and hence the loss of his job -- occurred solely because of *Guardsmark*. Burns had already won the contract when it approached plaintiff, and Guardsmark had no other jobs available. These factors alone do away with Guardsmark's argument that the covenant was needed to protect its "investment" in its employees, since by the time plaintiff was contacted, that "investment" was already lost. There is no allegation that plaintiff possessed any trade secrets or confidential information, that he had a particular unique or unusual talent, or that the nature of his work was something other than work in the nature of a "common calling."

> Thus, regardless of how narrowly the covenant was drawn, viewing it in the totality of the circumstances -- in a light most favorable to plaintiff -- presents considerable evidence of its unreasonable harshness to plaintiff. Further, Guardsmark's attempt to enforce the covenant occurred at a time when the value of the covenant to Guardsmark was minimal at best. In other words, plaintiff's evidence is such that -- disregarding conflicting evidence from Guardsmark which might show otherwise -- the trial court should have deemed the covenant unenforceable and against public policy under the specific facts and circumstances.

13

*Hankins v. Guardsmark, Inc.*, No. 80, 121, at 9-10 (Okla. Ct. App. Mar. 15, 1994) (unpublished mem.op.). Clearly, the enforceability of a restrictive covenant must be viewed in light of all of the circumstances in a given situation. *See* Restatement (Second) of Contracts § 186 cmt. a, § 188 cmt. g (1981). Section 188, comment g, to the Second Restatement of Contracts was quoted with approval in *Selox, Inc. v. Ford*, 675 S.W.2d 474, 476 (Tenn. 1984):

> Whether the risk that the employee may do injury to the employer is sufficient to justify a promise to refrain from competition after the termination of the employment would depend on the facts of the particular case. Post-employment restraints are scrutinized with particular care because they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through the loss of his livelihood.

*Selox*, 675 S.W.2d at 476 (quoting Restatement (Second) of Contracts § 188 cmt. g). Moreover, the level of support for the enforcement of restrictive covenants may differ from state to state. *See, e.g., American Protective Servs., Inc. v. Guardsmark, Inc.*, BC 115277 (Cal. Super. Ct. Los Angeles County) (transcript of proceedings on Feb. 21, 1996) (citing section 16600 of the California Business and Professional Code as prohibiting the enforcement of restrictive covenants). Where the enforceability of Guardsmark's restrictive covenant is so dependent on the facts in a particular situation and the laws and public policy of the state in which the employee resides, issuance of a nationwide injunction is clearly inappropriate. Therefore, while the trial court in this case had jurisdiction over the parties and the power and authority to issue a nationwide injunction under appropriate circumstances, the trial court abused its discretion by issuing an injunction, nationwide in scope, prohibiting Borg-Warner from "interfering with or attempting to cause the breach" of the restrictive covenants, or from litigating to challenge the enforceability of the covenants.

As noted above, the trial court's temporary injunction, made permanent in its final order, enjoins Borg-Warner from:

> misrepresenting facts, either expressly or by implication, to anyone, including former, present or prospective Guardsmark clients and employees, concerning Guardsmark's restrictive covenants. Specifically, Defendant is prohibited from providing such persons or entities, copies of any judicial orders or opinions concerning the Guardsmark restrictive covenants unless it provides all such orders, including those which have upheld the enforceability of Guardsmark's restrictive covenants.

As discussed above, the enforceability of Guardsmark's restrictive covenants depends on the factual circumstances and other factors, such as the laws and public policy of the state in which the

14

employee is located.[5] Consequently, if Borg-Warner expresses the view that Guardsmark's restrictive covenant may not be enforceable in a given situation, the truth of the statement depends on the factual circumstances and the law in the state involved. Therefore, the issuance of a nationwide injunction prohibiting Borg-Warner from taking the position that Guardsmark's restrictive covenant cannot be enforced in a particular situation is overly broad and inappropriate. The trial court abused its discretion in ordering such a broad, nationwide prohibition.

Borg-Warner next argues that the trial court erred in allowing Guardsmark to seek a declaratory judgment as to the validity of its restrictive covenants without joining as defendants the individual security guards who signed the covenants. Borg-Warner contends that the guards are indispensable parties under Tennessee Code Annotated § 29-14-107(a), which provides: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." Tenn. Code Ann. § 29-14-107(a) (1980).

"The non-joinder of necessary parties is fatal on the question of justiciability, which, in a suit for declaratory judgment, is a necessary condition of judicial relief." *Huntsville Utility District v. General Trust*, 839 S.W.2d 397, 400 (Tenn. App. 1992) (quoting *Wright v. Nashville Gas & Heating Co.*, 183 Tenn. 594, 598, 194 S.W.2d 459, 461 (1946)). Guardsmark argues that a declaration that the restrictive covenants are enforceable in this case does not prejudice the rights of the security guards who signed the covenants, because they remain free to challenge the covenants in individual actions. Therefore, Guardsmark contends that, under Section 29-14-107(a), the declaratory judgment does not "prejudice the rights of persons not parties to the proceedings." Tenn. Code Ann. § 29-14-107(a) (1980).

To determine whether the guards' interests would be affected by a declaratory judgment in this case, it must be determined whether Guardsmark could use the declaratory judgment against the guards in subsequent lawsuits under the doctrine of collateral estoppel. Collateral estoppel "precludes relitigation of issues between the parties or their privies in different causes of action provided resolution of the issue was necessary to the decision." *Phillips v. General Motors Corp.*, 669 S.W.2d 665, 667 (Tenn. App. 1984) (citing *Scales v. Scales*, 564 S.W.2d 667 (Tenn. App.

---

[5] There were no concomitant restrictions on Guardsmark to disclose to employees or others that the restrictive covenant may <u>not</u> be enforceable under some circumstances.

1977)).  If Guardsmark could utilize the declaratory judgment in this case to prevent relitigation of the validity of the covenants in subsequent actions against the guards in Washington and Alabama, this would clearly prejudice the rights of the guards.  Resolution of this issue, therefore, entails a study of the laws of those states and factual circumstances of each subsequent case.[6]  The law on collateral estoppel may differ from state to state as to whether mutuality of parties is required, the definition of privity, and other relevant issues.  The issue may turn on the facts of the particular case.  A case by case determination is necessary to ascertain whether a guard's interests are affected and, thus, whether he is an indispensable party.  Therefore, in this case, we remand for the trial court to determine whether the individual guards in Washington and Alabama are indispensable parties.

Because we find that the trial court abused its discretion in issuing a sweeping, nationwide injunction in this case, it is unnecessary to reach the issue of whether the injunction violates the Commerce Clause of the U.S. Constitution.  Likewise, the remaining issues raised by Borg-Warner are pretermitted by this holding.

The order of injunction issued by the trial court in this case is hereby reversed.  The cause is remanded to the trial court for a determination of whether Guardsmark is entitled to summary judgment in the specific factual circumstances presented in Seattle, Washington and Birmingham, Alabama and whether the guards are indispensable parties considering the doctrine of collateral estoppel under the laws of Washington and Alabama.

---

[6]    It is arguable that the choice-of-law clause in the covenants mandate that Tennessee law would apply in subsequent suits involving the guards.  However, the forum selection clause in the covenants states that "[t]he law of the State of Tennessee will govern the interpretation, validity, and effect of this Agreement."  This language indicates that the provision applies to substantive issues on interpretation of the agreement, not to procedural issues, such as whether collateral estoppel applies.

The decision of the trial court is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this Opinion. Costs are assessed against Appellee, for which execution may issue if necessary.

_____
_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**DAVID R. FARMER, J.**